CHARLES W. PARKER ET AL. *v.* JACOB PARKER'S ADMINIS-
TRATOR AND WIDOW.

A testator, by clear and express language in the former clause of his will, having divided all his property, real and personal, between his widow and his two children, giving to the widow and her heirs forever one third of his real estate, and more than one third of his personal estate, the sum appearing to be more than sufficient for her life support; and giving the residue of his estate, real and personal, in equal portions to his said children and heirs. Held:

1. That a subsequent declaration of the testator, in the concluding clauses of the will, that said bequests and devises to his wife were not intended to be and were not in lieu of dower in either his real or personal estate, does not operate to control or change the express bequests and devises so before stated in the will.

2. That the widow, having elected to take under the will and the personal property, not being intestate, she is not entitled to a distributive share of the personal property under the statute.

ERROR to the court of common pleas of Richland county Reserved in the district court.

On the 26th of December, 1857, Jacob Parker made his last will and testament, which reads as follows:

" I, Jacob Parker, of Mansfield, Ohio, being of sound mind and memory, and being desirous of disposing of my earthly property, do hereby make, ordain, publish and declare solemnly the following to be my last will and testament:

" ITEM 1. I hereby order and direct all my just debts, expenses of my last sickness, funeral expenses, including a decent grave-stone, to be a charge on my real as well as my personal estate.

" ITEM 2. My present wife, Mary, on her marriage with me, brought to me divers articles of personal property and estate, consisting of silver spoons, silver-ware, beds and bedding, bedsteads, bureau, desks, clock, tables, trunks, and various articles of household goods, books, and kitchen furniture, and her paraphernalia; and as to all these, I have never regarded, and do not now regard them, as my own; but as her separate estate. But, to guard against all questions and contingencies thereto attached, I give and bequeath all of them, the same, to her and her heirs forever; she to name, select and pick out the same; and her naming and selections to be final and conclusive in the premises.

" ITEM 3. I further give and bequeath to my said wife and her heirs all her and my wearing apparel, and all my household and kitchen furniture of every kind and description, comprehending all articles of personal property in my house, in its broadest extent, books excepted; and of them, viz: books, such as she may choose and select, excluding only my law books.

" ITEM 4. I further give and bequeath to her, my said wife, Mary, one third of all the residue and remainder of my personal property and estate of every kind and description, including my credits, bonds, notes, mortgages, stocks in bank or in company; indeed, of all my personal estate, of every sort and description, to the largest extent, to her and her heirs.

" ITEM 5. I further give and bequeath to my said wife,

Mary, and her heirs, one undivided third part of all my real estate, wherever situate.

" ITEM 6.    The other two thirds of my said personal and real estate, not herein disposed of, I order and direct to be divided into two parts or portions; one of which I hereby give and bequeath to my daughter, Charlotte B. Wood, and her heirs; and one to my son, Charles W. Parker, and his heirs; and I hereby declare that I have advanced to my said daughter, and to my said son, Charles, each the sum of five hundred dollars, which respective amounts I order and direct to be deducted from their said shares, respectively; and which advances are evidenced by notes, which I direct to be canceled, in case I do not before my death.

" ITEM 7.    I further give and bequeath to my said son, Charles, my gold watch and its appendages.

" ITEM 8.    I give and bequeath to my brother-in-law, Daniel Sherman, of Knox county, Ohio, my gold-headed cane.    I give and bequeath to William Sherman, son of said Daniel Sherman, and his heirs, all the notes and due bills, sealed or unsealed, I hold against his father, the said Daniel Sherman.

" ITEM 9.    The above bequests and devises to my said wife are made and given to her; and as she is well acquainted with my wishes and expectations with regard to her final disposition, by will or otherwise, of what of mine I have herein given her, I have nothing to add, trusting entirely to her sense of right to do whatever she religiously thinks just, whenever she, in the course of nature, is done with it; and this is by way of advice to her, and not of direction.

" ITEM 10.    Should my said wife, however, desire and prefer, instead of and in lieu of item 5—being a devise to her in fee of one third of all my real estate—to have and enjoy, during her life, my dwelling-house and the lots on which it is erected, then I give and devise and bequeath to her, during her life, in-lots numbers one hundred and forty-two (142) and one hundred and forty-three (143), in the town of Mansfield, Ohio, with the use, for life, of the well on lot No. 144, adjoining, with the appurtenances, being the

lots on which my present dwelling-house is situate; and to enable her the better to judge which is better suited to her, or for her interest, I hereby direct and order that she shall have one year from my decease to make her determination and election; provided, that if within that time she makes none, then the said devise, in item 5, of one third of my real estate shall stand as it is. She, however, in the meantime— viz: said year—to remain and retain the exclusive possession and occupancy of said lots and house, etc.

"ITEM 11. As I have, at various times, bargained and sold, to different persons, town lots and tracts of land, etc., and the contracts for them are incomplete, either by non-payment of the purchase money, or by deeds not having been made by me, in my lifetime, or both, I do hereby empower and direct my executor, or whomsoever may be charged with the execution and administration of this my will, to complete said contracts, etc., and to make such deeds of conveyance as I am bound to make, on payment of the purchase money, if any, remaining unpaid, giving and granting him or them full power, in these and all other cases, to settle, compromise, release and discharge the same, and all claims and debts, etc., due to or from me, with the attendant securities, if any, as he or they may judge proper, right and honest; and I hereby authorize and empower my executor, or whomsoever may be charged with the execution and administration of this my will, to sell and convey, if thought advisable, all and any part of my real estate, and all interest and title in the same, wherever situate, upon such terms and at such prices as he or they shall see fit, and to such person or persons, either for cash or on credit, or both; and I hereby further declare that the above bequests and devises to my said wife are not intended to be and are not in lieu of dower, in either my said real or personal estate.

"In testimony of all which, I, the said testator, have hereunto set my hand and seal, this twenty-sixth day of December, A. D. 1857, at Mansfield, Ohio, hereby revoking all former wills by me made.

"JACOB PARKER." [SEAL.]

On December 29th, 1858, the widow elected to take under the will, and under item 5, and not under item 10.

After full payment of all the debts of the testator, the expenses of his last sickness, the funeral expenses, including a decent grave stone, and after satisfying all legacies of specific articles, and defraying the costs of administration, there remains in the hands of the administrator with the will annexed, over ten thousand dollars for distribution to Mary B. Parker, the widow of the testator, and his son and daughter, Charles W. Parker and Charlotte B. Wood.

The administrator insists that under the will the widow must first have set apart to her, one half of the first four hundred dollars, and one third of the residue of the sum for distribution, as her distributive share, as fixed by statute, and under the last clause of the 11th item of the will; and that, after such distributive share is set apart to the widow, the balance is to be divided—one third to the widow, under the 4th item of the will, and of the other two thirds—one of them to Charlotte B. Wood, and the other to Charles W. Parker, under the 6th item of the will. The widow also claims that such is the proper way to distribute the fund. But Charles and Charlotte insist that the widow is not entitled to have one half of the first four hundred dollars and one third of the residue, and also one third of what may remain after such deduction, but that the whole sum for distribution should be divided—one third to the widow, one third to Charles, and the other third to Charlotte. And to obtain such a distribution of the fund, the said Charles and Charlotte filed a petition against the administrator and widow in the court of common pleas of Richland county, praying for a construction of the will.

The court of common pleas decided that the construction of the will and distribution of the fund should be as claimed by the administrator and widow, and not as claimed by the son and daughter, Charles and Charlotte, and judgment was entered accordingly. To reverse that judgment they filed a petition in error in the district court, wherein the case was reserved to this court for decision.

*R. C. Hurd*, for the plaintiffs.

*A. G. Thurman*, *L. J. Critchfield* and *A. L. Brewer*, for defendants.

SUTLIFF, C. J.—The will is sufficiently clear and explicit in its terms, to require no judicial construction, if there be omitted, in the reading, the latter part of the last item.  Indeed, all of item eleven might have been entirely omitted by the testator, without impairing the apparent completeness of the instrument.

But item eleven, however apparently inconsonant with other parts of the will, constitutes part of it, and is entitled to all the respect that any other item is, as part of the whole instrument, from which, when read altogether, the meaning of the testator is to be ascertained.

By items 2, 3, 4 and 5, of the will, the testator gives back all the property to the widow which she brought to him, and all his household property, furniture, apparel and books included, with limited exceptions ; and also one third part of all the remainder of his personal property, and one third part of all his real property.

The other two thirds of all his personal and real property, not disposed of in the will, the testator, by item 6, by language equally clear and explicit, gives to his two children.

With the exceptions of the specific legacies mentioned in items 7 and 8, this careful and express division and devise of his property, personal and real, by the testator, between the widow and the two children, his son and daughter, is not changed nor qualified, unless it be by the latter clause of item eleven.  Is this clear and definite disposition and division of of property by the testator thus expressed in those preceding items, set aside or changed by the concluding clause of the last item ?

The testator, in this concluding clause of the eleventh item, says : "I hereby authorize and empower my executor, or whomsoever may be charged with the execution and administration of this my will, to sell and convey, if thought advisable, all and any part of my real estate.    *    *    *    *

\* \* And I hereby further declare that the above bequests and devises to my said wife are not intended to be, and are not, in lieu of dower in either my said real or personal estate."

Whatever may be said of the incongruity of the provision authorizing an executor (not named) to sell all of his lands, when the same had been given away by a previous clause in the will, this power, so proposed to be granted, does not revoke the previous devise. A like remark may be made of the other expression—"And I hereby further declare, that the above bequests and devises to my said wife are not intended to be, and are not, in lieu of dower in either my said real or personal estate." However seemingly incongruous, it does not, in language, revoke or add to the preceding devises and bequests expressed in the will.

But, on the part of the widow, it is urged that this declaration, in relation to such devises and bequests to the widow, must, as well as other parts of the will, have some effect; and that its natural effect is, by implication, to enlarge the bequest to the widow by deductions to be made from the bequests to the son and daughter of the testator.

By the 1st section of the act relating to wills, passed May 3, 1852 (Curwen's Stat., chap. 1197), it is provided that any person of full age and sound memory, having property real or personal, may give and devise the same to any person by last will and testament lawfully executed, subject nevertheless to the rights of creditors, and the provisions of the act," etc. This express power of giving his property, by last will, is, to the same extent, an implied power to the devisee of receiving property so given by the will.

And, by the act to provide for the settlement of estates of deceased persons, passed March 23, 1840, sec. 180 (Curwen's Stat., chap. 341), it is provided, that where an intestate has left a widow and child or children, the widow shall be entitled, upon distribution, to one half of any sum, not exceeding four hundred dollars and to one third of the residue of the personal estate, subject to distribution.

Now, it is claimed on the part of the widow, that she is

entitled, not only to the share of the property given her by the will of the testator, but that she is also entitled to take her distributive share under this sec. 180, or, as thereby expressed.

But let us recur again to the act relating to wills. The act, as we have seen, authorizes the disposition of property by will, subject to the restrictions and conditions imposed by the act, and by force of which the implied power arises to the devisee to receive property, subject to the same restrictions and conditions. Among the conditions and restrictions of that act, are the following:

"Sec. 43. If any provision be made for a widow in the will of her husband, she shall, within one year after the probate of the will, make her election whether she will take such provision, or be endowed of his lands, but she shall not be entitled to both, unless it plainly appears by the will to have been the intention of the testator that she shall have such provision in addition to her dower."

"Sec. 44. The election of the widow to take under the will shall be made by her in person in the probate court of the proper county. * * * * And, if the widow shall fail to make such election, she shall retain her dower and such share of the personal estate of her husband as she would be entitled to by law, in case her husband had died intestate. If she elect to take under the will she shall be barred of her dower, and take under the will alone," etc.

The widow then could only take under the will, subject to the restrictions and conditions imposed by these sections, 43 and 44, of the wills act. And the record shows that she recognized such to be the law, and accordingly made her election to take under the will. Having thus complied with the statutory condition of the act, and made her election to take under the will, what is the express restriction under which the widow takes? This being a case, as clearly shown by the will, where a provision is "made for the widow in the will of her husband," it is by sec. 43, expressly provided, if she elect to take under the will, as in this case, she shall not be endowed of his lands, unless it plainly appear by the will—

not that the testator did not intend to exclude her—but to have been the intention of the testator that she should have *both* the provision so made her by the will, and also her dower. And if *this*, in the language of the act, " plainly appears by the will to have been the intention of the testator," it must, like all other intentions of the testator plainly appearing in the will, and within the act, have effect.

But it is only under section 44 that the widow's claim to the personal estate is at all affected by her election. In case she do not elect to take under the will, this section provides that the widow " shall retain her dower, and such share of the personal estate of her husband as she would be entitled to by law, in case her husband had died intestate." But the widow is not, in the present case, entitled to this provision, which is only made to apply to a case in which the widow does *not* elect to take under the will. Here the record shows the widow *did* elect to take under the will; in which case this is the restriction expressed by section 44: " If she elect to take under the will, she shall be barred of her dower, and take under the will alone."

It is certain, therefore, by the language of section 44, that under a will of the husband, in which any provision has been made for the widow, and she has elected to take under the will, she will not be· entitled to such share of the personal estate of her husband as she would have been entitled to if her husband had died intestate, as is provided in the case where she does *not* elect to take under the will; but, in the language of section 44, having elected to take under the will, " she shall be barred of her dower, and take under the will alone."

And this, as to section 44, is the positive provision of the statute, irrespective of the intention of the testator in that regard. And it is to the language of the statute we must look for its meaning, just as it is to the language of the instrument that we look to ascertain the meaning of the will. Nor is it in the power of a testator to add to or diminish the force of the statute relating to his will. The language of the will may show what rule of law or statute it is to be

resolved under, as particularly applicable to the provisions of the will. The fact, in this case, that the will of the husband makes provision for the widow, and the additional fact that she, according to the provisions of the statute, did elect to take under the will, exclude her from that provision of section 44 for a case in which the widow fails to make such election, or does not elect to take under the will.

It, therefore, follows that the facts of this case, as presented by the record, not only fail to bring the case within the provision of section 44, entitling the widow to receive a share of the *testate* personal property, as though it were *intestate;* but the facts *exclude* the case from *that* provision, and bring it within the letter of the provision of the other alternative of that section, as to all the provisions of that section, at least, to take nothing, except by the will.

If, therefore, the widow were entitled to any distributive share of the personal estate of the testator, it must be by force of some other statute. But the only remaining statute allowing the widow a distributive share of the personal property of a deceased husband, is section 180 of the act for the settlement of estates, already referred to. The language of that section is as follows:

"When the intestate shall not have left any legitimate child, heir of his body, the widow shall be entitled to all the personal estate, as next of kin, which shall be subject to distribution upon settlement of the estate; and if the intestate shall have left such child, the widow shall be entitled, upon distribution, to one half of any sum not exceeding four hundred dollars, and to one third of the residue of the personal estate subject to distribution."

This is the statutory provision referred to in section 44 of the wills act, expressing the "share of the personal estate of her husband" the widow would be entitled to, in case the husband die *intestate.* But this section only includes personal estates of *intestates*, and *not* of *testates*. And, inasmuch as it is not claimed that this is a case of the personal estate of an *intestate*, it is not included within and subject to the operation of this statute.

It is evident, therefore, that the widow can neither take, in this case, by force of section 44 of the wills act, nor by section 180 of the administration act, any distributive share of the personal estate of the testator.

If, then, she is entitled to the distributive share of the personal estate mentioned in said section 180, it is not by force of that section, nor by force of said section 44, but by mere operation of the will—by operative words contained in the will conveying the same to her as a bequest.

Let us, then, turn to the will, and see whether, by a fair reading and understanding of its provisions, it thereby appears to have been the will, wish or intent of the testator that the widow should, in addition to the personal and real property expressly given her by items 2, 3, 4 and 5 of the will, also have dower, and a statutory distributive share in the residue of the estate.

There are certain recognized rules, peculiar to the con-struction of wills, which it is supposed may somewhat aid the careful and attentive reader in ascertaining the correct meaning of the instrument. The rules applicable to the construction of a will, are, for the most part, the same applicable to the correct understanding of deeds, contracts, and other instruments of writing. But it may be well to refer to the following, among other rules to be regarded, in the reading of this will. (2 Jarman, 744.)

"RULE 7. That all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.

"RULE 10. Courts will look at the circumstances under which the devisor makes his will—as the state of his property, of his family, and the like.

"RULE 11. That, in general, implication is admissible only in the absence of, and not to control, an express disposition.

"RULE 12. That an express and positive devise can not be controlled by the reason assigned, or by subsequent ambiguous words, or by inference and argument from other

parts of the will; and, accordingly, such a devise is not affected by a subsequent inaccurate recital of or reference to its contents, though recourse may be had to such reference to assist the construction, in case of ambiguity or doubt."

Looking, then, at all the parts of the will, so as to make it form a consistent whole under the circumstances of the testator, as shown by the record, what was the meaning of the testator, expressed by the will, in relation to the disposition of his personal estate?

First, of the circumstances of the testator: It appears from the record and the will that the testator was, at the time, possessed of considerable real estate, and personal estate to the amount of some ten thousand dollars more than sufficient to pay his debts; that he was living with his second wife, and had living a son and daughter by his former marriage; that he had advanced, before the making of his will, the sum of $500 to his son, and a like sum to his daughter, who was then married; and that, at the time, he had taken, and still held, the promissory note of each for the amount so advanced. Under these circumstances the testator made his will, and, with the exception of two or three specific legacies of small value, divides his property between his wife and two children, as follows, by express provisions of the will:

In the first place, he devises to his wife, all the property she brought to him upon their marriage, and also all his household and kitchen furniture, and all articles of personal property in his house, in its broadest extent, excepting only his law books, giving her also his own wearing apparel; and then, in addition to this, the testator proceeds to give to her one third part of all the residue and remainder of his personal property in the language of the will—" of every sort and description to the largest extent, to her and to her heirs;" and also one undivided third part of all his real estate.

And in the next item, the testator continues: " The other two thirds of my said personal and real estate, not herein disposed of, I order and direct to be divided into two portions, one of which I hereby give and bequeath to my daughter, Charlotte B. Wood and her heirs, and one to my son, Charles

W. Parker and his heirs;" declaring that he had advanced $500 to each of his said children, and directing that sum to be deducted from their respective shares.

This division and disposition of the testator's property is clear, express and explicit, and leaves, by the language in which expressed, no doubt or uncertainty as to the intentions of the testator. There is an express and positive devise and bequest by items 4 and 5, of one third of the residue of his personal and real estate to the widow, and by item 6, a like express and positive devise of a like third to each of his two children. Is this plain and express disposition of his property changed in any succeeding clause of the will?

By one of the rules of construction stated, if the devises thus clearly and pointedly made, can not be revoked or changed, except by a clearly expressed intention of the testator to that effect, has the testator expressed a wish to revoke or change the division and disposition of the property so made?

The first reference made by the testator to this division of his property, is found in item 9, in which he says: " The above bequests and devises to my said wife are made and given to her; and as she is well acquainted with my wishes and expectations with regard to her final disposition by will or otherwise, of what of mine I have herein given her, I have nothing to add, trusting entirely to her sense of right to do whatever she religiously thinks just, whenever she, in the course of nature, is done with it; and this by way of advice to her, and not of direction." This item shows a consciousness on the part of the testator of great liberality in the division in favor of his wife, as compared with the shares apportioned to his children. It also contains a delicate but very plain appeal to her religious sense of justice not to disappoint his wishes and expectations, with which she had been made fully acquainted; that when she, in the course of nature, should have no further use for the property, that she should convey the residue to his heirs. These are some of the words: — " As she is well acquainted with my wishes and expectations with regard to her final disposition by will or otherwise, of what of mine I have herein given her;" thus distinguishing

between the property received from her by the testator, in relation to her disposition of which he makes no mention, and doubtless had no expectations in favor of his own children from that source, " trusting entirely to her sense of right" (as to what of mine I have herein given), " to do what she religiously thinks just, whenever she, in the course of nature, is done with it." And these last words clearly express the testator's confidence, that the property so given her was more than adequate for her support; so that it is evident the testator did not contemplate either a necessity or propriety in augmenting her portion by still further diminishing that of his children beyond the deduction he had already made from the portion of each, for the $500, so before advanced.

But neither in item 9 nor any succeeding one is there any intimation of a consciousness by the testator of having dealt with extravagant liberality toward his own children, in his division between his wife and them. On the contrary, I think from this item, 9, it is pretty clearly to be inferred that the testator intended the language used, not only as a delicate appeal to his wife not to disappoint his reasonable expectations, which she well understood, in her final disposition of the liberal portion so given her ; but also as a justification to his own children for a seeming want of that sense of justice toward them, in the division which they had a right to expect from an intelligent and kind parent.

It is said, however, that by the latter clause of item 11, there is expressed a change of the division and disposition of his property so made between the wife and children by the testator, by taking from each of the children's lesser share than hers, one third part thereof, and adding the same to that so given his wife.

It is not understood that anything is claimed on the part of the widow, from the words : " I authorize and empower my executors * * * to sell and convey * * * all and any part of my real estate," etc. ; but it is insisted that the declaration in the concluding clause, that the bequests and devises to his wife are not intended to be in lieu of dower, necessarily increases the widow's share by the amount of her

dower in the lands so given to the children, and by her dis-- tributive share of the personal estate as expressed by said section 180 of the administration act.

We have seen that in the preceding items of the will, the testator has by express and positive devise conveyed all of his real and personal property; and that by rule 11, an im- plication in such a case is not admissible to control such ex- press disposition. And by rule 12, we have seen an express and positive devise can not be controlled by the reasons as- signed, or by inference or argument from other parts of the will. Now, in the light of these general rules of construc- tion, let us again recur to the precise language relied upon to control and change this express and positive devise and disposition before made of this property by the testator in the will. These are the words in the concluding clause of item 11, relied upon so to control and change the preceding express and positive devise: "And I hereby further declare that the above bequests and devises to my said wife are not intended to be, and are not, in lieu of dower, in either my said real or personal estate." Now, it can not be pretended that these words amount to an express devise. The language is not even a declaration of the reason of his bequest and devise of so large a share of his property to his wife. The testator merely declares that the reason was not to give it to her in lieu of dower. Whether he meant this declaration as an ad- ditional caution to her, not to disappoint his wishes and ex- pectations in the final return of the property, by will or other- wise, to his children, we are left to conjecture. The one third part of the personal and real property given the widow, in addition to the property before given her in the will, as to the real estate and residue of the personal, was so like a dower and distributive interest in form and amount, except that the land was given in fee simple, it might have served, but for his declaration to the contrary, to be in lieu of dower, and to have justified her friends in asserting that she so received it; and not from the bounty of the testator. At least, the testator may have had reasons for making this declaration which he supposed would be understood by those for whom

intended, and very foreign to any change in his former express and positive devise; and it is quite certain that the language, taken in connection with other parts of the will, might be understood to imply such a meaning. Nor can it, on the other hand, be denied that the declaration is susceptible, by implication, of being understood that the bequests and devises so made to his wife " are not intended to be, and are not in lieu of dower," in either his real or personal estate, so as to bar or qualify her claim of dower in the real estate, and her distributive share of the personal estate under the statute, if she saw fit to assert her right. The most favorable construction of the language for the widow's claim goes no further. And looking at the whole will, this, I think, can not be regarded a more natural meaning of the language than the one first supposed. It is the inference or implication arising from this declaration, and not the language used, that is relied upon to vary or change the former express devise. But the inference or implication so arising from the language, is evidently uncertain and even ambiguous.

If then we have respect to the language of the declaration, that the bequests and devises " are not intended to be, and are not, in lieu of dower," etc., as expressing a negative reason for making the devise, or even if we assume, as a legitimate inference from the declaration, what is claimed by counsel of the widow, that the testator intended thereby that his wife should not be deprived of dower, if she saw fit to demand it; still, in each and all of these cases it would be opposed to the rules of construction to suffer the express and positive devises and bequests of the testator to be thereby changed or defeated. And to this effect are the authorities referred to by counsel for plaintiffs in error.

In the case of *Thornhill et al.* v. *Hull*, 2 Clark & Finn. 22 (House of Lords Cases), it was expressly held, upon full argument, that " it is a rule of the courts, in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument, in clear and decisive terms, such interest or estate can not be taken away or cut down by raising a doubt, upon the extent and meaning

and application of a subsequent clause, nor by inference
therefrom, nor by any subsequent words that are not as clear
and decisive as the words of the clause giving that interest
or estate." In pronouncing the opinion in that case the lord
chancellor, Brougham, said : " I hold it to be a rule that ad-
mits of no exception, in the construction of written instru-
ments, that where one interest is given, where one estate is
conveyed, where one benefit is bestowed in one part of the
instrument, by terms clear, unambiguous, liable to no doubt,
clouded by no obscurity, by terms upon which, if they stood
alone, no man breathing, be he lawyer, or be he layman,
could entertain a doubt—in order to reverse that opinion, to
which the *terms would*, of themselves and standing alone,
have led, it is not sufficient that you should raise a mist; it
is not sufficient that you should create a doubt; it is not suf-
ficient that you should show a possibility ; it is not even suf-
ficient that you should deal in probabilities; but you must
show something in another part of that instrument, which is
as decisive the one way as the other terms were decisive the
other way ; and that the interest first given can not be taken
away either by *tacitum* or by *dubium* or by *possibile*, or even
by *probabile*, but that it must be taken away, and can only be
taken away by *expressum et certum.*"

In the present case, it must be admitted that the entire
interest and estate in this personal property is given and dis-
posed of in items 4 and 6 of the will, " by terms clear, un-
ambiguous and liable to no doubt." To apply, then, the
doctrine held in the case of *Thornhill* v. *Hull*, just cited, it
is certain that this clear expressed intention of the testator,
to thus dispose of his personal estate, can not be overcome,
or set aside by any doubt, possibility, or even probability of
a contrary intention, arising out of his after declaration, con-
tained in the will, that the devise and bequests to his wife
were not intended to be in lieu of dower.

But even if it be conceded that the true meaning of the
declaration of the testator is, as has been supposed, to the
effect that he wishes, by the provision so made for his wife,
not to bar or hinder her from asserting her right of dower

and distribution under the statute, the result would be the same. As we have already seen, the fact of the will being the will of the widow's husband, and making provisions for her, even as to the real estate, brings the case within section 43 of the wills act, which precludes her additional right to dower after having elected to take under the will, unless it plainly appear by the will, not that the testator did not *object*, but that it was clearly *his intention* that the widow should have both, the provision in the will, and also her dower.

But as to section 44, relating to the personal property, as we have seen, the election of the widow to take under the will, no matter what may be the intentions of the husband, precludes her from taking under that section, except under the will alone. And we have also seen that after having elected to take under the will, admitting the estate testate, she can not claim distribution under section 180 of the administration act as of an intestate estate. It is, therefore, evident that barely expressing a wish that the will shall not constitute a bar to her applying to the court for the benefit of statutory provisions in her favor, is not sufficient. Such an expression is not equivalent to saying that he wished his wife's share increased by the amount to which she would have been entitled if she had not received anything under the will. Nothing can be gained as a *devise* or *bequest* from this declaration, except by *implication* or *inference:* and that, as we have shown, is not admissible to control the previous disposition of the property by express and positive devise.

Nor is this at all inconsistent with the rule requiring that where there are several clauses, absolutely irreconcilable, the latter shall prevail. The language of this declaration of the testator does not conflict with the language of the previous express devises, so far as the common received and well understood meaning of the language is regarded. It is only the implication sought to be raised from the declaration, by counsel of defendant, which makes this latter clause appear repugnant to the preceding clauses of the will; while other inferences, as we have seen, equally natural, arising from the

declaration would make it consistent with the other parts, and give full effect to all the provisions of the will.

But the rules for the construction of a will, as well as of other instruments of writing, it must be remembered, are intended as mere aids for the attainment of the main object—the correct comprehension of the true meaning of the whole instrument, taken altogether. And the rules are, after all, nothing but an expression of common sense views for the attainment of this object—the true meaning of the instrument. And when not so applied, for the attainment of their object, these rules will perplex and hinder rather than aid us in arriving at correct conclusions. Hence this rule, that the last clause in a will, as well as the first in a deed, must prevail, arising as it does upon a nice regard to the consideration, that a grant in the deed leaves nothing in an after clause to be granted, while the last intent or wish expressed by the testator is alone operative, is not to be insisted upon against reason. For, while it is true, as the rule supposes, that the testator may, for instance, after expressing a devise of his house to his wife, and his shop to his son, in an after clause of the will, express a different wish, by language devising the shop to the wife, and the house to the son; and if convinced of such change of purpose, upon a careful reading of the will, full effect should be given to the latter clause even to the entire abrogation of the former clause; yet, it should be remembered that such changes of mind very rarely occur in the same instrument; and where they are not clearly expressed, such inconsistencies are never to be inferred. And it is even admissible to reject a subsequent word, or a clause, utterly inconsistent with a preceding one, if it is apparent, upon a careful reading of the whole will, that such word or phrase is a misrecital, or by mistake used; in such a case, the same should be disregarded, and not suffered to defeat the evident intentions of the testator, obtained from reading the whole will.

Nor is anything gained, in favor of the construction insisted upon by counsel of defendants, from the words, in item 6, "not herein disposed of." It is true those words show

9

clearly that the testator intended to dispose of all his property by his will—the third to his widow, and a third to each of his two children, of all not otherwise disposed of by the will; and the words "not herein disposed of," mean simply the residue of his personal estate, after deducting all the preceding and all the succeeding bequests, that might be contained in the will. The preceding bequests to the widow, and the succeeding legacies or bequests to his son, Charles, and to his friends, Daniel Sherman and William Sherman, as expressed in items 7 and 8, have to be deducted, as " therein disposed of," before dividing the residue between his children. And if the declaration that the bequests and devises to his wife are not intended to be and are not in lieu of dower, is *also* a *bequest,* whatever is thereby bequeathed, must also be deducted, before the residue can be·ascertained and divided according to the provisions of the will. It still remains to be determined whether this declaration of an *absence* of an intention, on the part of the testator, in relation to the bequests already made to his wife, amounts to an *expression* of an intention to make her a further bequest; and, if so, the nature and amount of it. And this can only be determined by the language of the declaration, and not from this clause in item 6.

It is sufficient, then, in conclusion, to say that, inasmuch as the personal estate is not that of an *intestate,* so as to admit of the application of the statute for the distribution ·of an intestate estate, and the widow having made her elec·tion, under said section 44, to take under the will, she can not take a distributive share of the personal estate by force of either of those statutes. The widow can, therefore, only take under the will; and the testator having therein, by express bequests, given, in addition to the specific legacies, one third of the personal estate to the widow, and a like portion to each of his two children, these express bequests are not changed by any implication or inferences arising from any subsequent declaration or language used in the will.

Entertaining these views of the case, a majority of the

court are of opinion that the judgment of the court of common pleas should be reversed.

Judgment accordingly.

PECK, GHOLSON and BRINKERHOFF, JJ., concurred; SCOTT, J., dissented.