Blair et al., Trustees, Appellees, *v.* Brown et al., Appellants.

(No. 3875—Decided April 27, 1942.)

*Messrs. Williams, Eversman & Morgan,* for appellees.

*Messrs. Effler & Eastman, Mr. Otto H. Spengler, Mr. George N. Fell, Messrs. Geer, Lane & Downing; Messrs. Logan & Bradley, Messrs. Harry and Stanley K. Levison, Messrs. Heslip & Gibson, Messrs. Beckwith, Ohlinger, Koles & Wolf, Messrs. Rhoades & Rhoades,* and *Messrs. Marshall, Melhorn, Davies, Wall & Bloch,* for the charity legatees.

*Mr. Franklin L. Maier, Mr. Raymond T. Garrison, Messrs. Farber & Cochrane, Messrs. Morley, Stickle & Murphy, Mr. Herman R. Miller, Mr. Felix C. Reber, Mr. J. D. Williamson, Messrs. A. G. & R. E. Fuller, Messrs. Flynn, Frohman, Buckingham, Py & Kruse, Messrs. Rupp & Hahn, Mr. Ralph Emery, Mr. George C. Bryce, Mr. Lloyd T. Williams, Messrs. Welles, Kelsey, Cobourn & Harrington, Messrs. Fraser, Effler, Shumaker & Winn* and *Messrs. Bryan, Williams, Cave & McPheeters,* for other legatees.

OVERMYER, J. This proceeding was filed in the Probate Court of this county (later transferred by it to the Common Pleas Court) by the present testamentary trustees under the will of Clarence Brown, late of Toledo, Ohio, seeking the construction of his will in several respects, and the direction of the court as to their duties in the distribution of income of the residuary estate, and as to the final distribution of a "remainder and residue" of some four million dollars of the residuary estate which apparently will be on hand in August 1942, when by the terms of the will such final distribution shall be made by them.

All parties in interest being before the court, the cause was submitted in the Common Pleas Court and a finding, judgment and decree there entered, from which judgment this appeal on questions of law and fact is being prosecuted by a group of defendants, twenty-one in number, referred to during the hearings, the briefs and herein as "the charities," the names of which will hereinafter appear in item XXXI of the will. The contending parties are the charities and certain of the individual legatees named in the will.

The two principal questions presented for answer are: First, did the individual legatees named in the will receive a vested or a contingent interest in the

bequest set up in item XXXII of the will? Second, are the corporations and associations (the charities) named in item XXXI to share with the individual legatees in the distribution of the "remainder and residue" of the residuary estate referred to in item XXXII?

The will involved was executed by Mr. Brown, himself a lawyer of great ability, assisted by two equally capable lawyers, on June 4, 1918, and Mr. Brown died on July 30, 1918, leaving his widow but no children surviving.

The will is in the following words, omitting the signature and attestation clauses:

"Know all men by these presents, that I, Clarence Brown, of Toledo, Ohio, do make, publish and declare this my last will and testament, hereby revoking any and all wills heretofore by me made.

"Item I. It is my will that my just debts and funeral expenses be paid after my decease as soon as it is practicable.

"Item II. I give and devise to my wife, Carrie L. Brown, for and during the term of her natural life, my residence in Toledo, Ohio, being the north ninety-five (95) feet of the south one hundred forty-five (145) feet of lot number one hundred forty-eight (148) in Scottwood Addition of said city of Toledo, Ohio; together with all and singular my household furniture and effects, wearing apparel, furniture, books, plate, pictures, jewelry, automobiles and all other articles of personal property used in or about my said residence. My said wife may, at any time during her lifetime, sell, convey and dispose of by gift or otherwise the real estate and personal property aforesaid, or any part or portion thereof, and any sale, conveyance, or disposition of any or all of the real estate and personal property aforesaid so made

by my said wife shall vest in the purchaser or donee a good and sufficient title thereto, in fee simple.

"In the event my said wife, Carrie L. Brown, does not survive me, or in the event that she does survive me then upon her death, the real estate and personal property aforesaid, or such part or portion thereof as shall remain undisposed of by my wife under the provision aforesaid shall go to my niece, Myra Gould Summers, of Toledo, Ohio, in fee simple. In the event of the death of the said Myra Gould Summers prior to my death, if my wife does not survive me, or prior to the death of my wife if my wife does survive me, then the real estate and personal property aforesaid shall pass to and vest in fee simple in the heirs of the body of said Myra Gould Summers her surviving.

"Item III. I give and bequeath to my said wife Carrie L. Brown the sum of two hundred fifty thousand dollars ($250,000) in securities owned by me at the time of my decease. The securities comprising said bequest shall be such as may be selected by my said wife in the amount aforesaid at the value placed thereon by the appraisers of my estate, or, at the option of my said wife, at the current market prices of said securities at the time such selection is made. My said wife shall make such selection of said securities within ninety days after the appraisement of my estate and said bequest shall be paid immediately after such selection is made.

"The bequest in this Item III contained shall have preference over all other bequests made in this instrument and there shall be no distribution of any of my estate or any payment made upon any other such bequest until payment of said bequest to my wife has been made in full.

"Item IV. I give and bequeath to my sister Hallie B. Hastings, of Toledo, Ohio, the sum of five thousand

dollars ($5,000), to be paid to her as soon after my decease as is practicable.

"I further give to my said sister the sum of three thousand dollars ($3,000) per year, payable in equal monthly installments upon the first of each and every calendar month for and during the term of her natural life. Said payments shall be made by my executors during the administration of my estate, and thereafter by my trustee hereinafter appointed from the funds in their hands, arising from my residuary estate, as hereinafter defined. In the event that my said sister Hallie B. Hastings shall be living at the time of the final distribution of my estate it is my will and I hereby direct that my trustee or my executors, as the case may be, before such distribution is made, shall purchase from a standard life insurance company doing business within the state of Ohio, an annuity in the amount aforesaid upon the life of the said Hallie B. Hastings payable to her.

"Item V. I give and bequeath to Mary C. Brown, the wife of my brother Charles H. Brown, of Knoxville, Tennessee, the sum of fifteen thousand dollars ($15,000); said payment to be made in three equal annual installments; the first of said payments to be made as soon as convenient after the date of my decease and the other two payments to be made equally upon the first two anniversaries of my decease. If, however, the said Mary C. Brown should die before said payments, or any one of them is made, I hereby direct that my executors or my trustee hereinafter named, set aside the amount which may remain of said bequest unpaid upon her death, and pay the income therefrom to her husband Charles H. Brown, or in the event neither Mary C. Brown nor Charles H. Brown shall survive me, said bequest or the balance remaining unpaid of the principal and interest thereof

shall be paid to the children of the said Charles H. Brown and Mary C. Brown then living, share and share alike.

"Item VI. I give and bequeath to Mary Elizabeth Brown and Harriet Brown, of Knoxville, Tennessee, and to each of them, daughters of the said Charles H. Brown and Mary C. Brown, the sum of fifteen thousand dollars ($15,000); said payments to be made in three equal annual installments, the first of said payments to be made as soon as convenient after the date of my decease, and the other two payments to be made annually upon the first two anniversaries of my decease.

"Item VII. I give and bequeath to Ralph W. Brown and Charles H. Brown, Jr., of Knoxville, Tennessee, and to each of them, sons of the said Charles H. Brown and Mary C. Brown, the sum of five thousand dollars ($5,000); said payments to be made in three equal annual installments, the first of said payments to be made as soon as convenient after the date of my decease, and the other two payments to be made annually upon the first two anniversaries of my decease.

"Item VIII. I give and bequeath to my brother Otis A. Brown, of Knoxville, Tennessee, the sum of twenty thousand dollars, ($20,000), and to my niece, Mabel W. Brown, daughter of said Otis A. Brown, the sum of ten thousand dollars ($10,000), and to my nephew Edward R. Brown, of Chicago, Illinois, son of the said Otis A. Brown, the sum of five thousand dollars ($5,000).

"Item IX. I give and bequeath to my brother Horace C. Brown of Massillon, Ohio, should he be living at the time of my death, the sum of twenty-five thousand dollars ($25,000). If the said Horace C. Brown should not survive me, then and in that event, I give and bequeath to his wife Ella R. Brown, should she be

living at the time of my death, the sum of fifteen thousand dollars ($15,000).

"Item X. I give and bequeath to my niece Myra Gould Summers, of Toledo, Ohio, if she survive me, the sum of fifty thousand ($50,000). If, however, the said Myra Gould Summers should not survive me, then and in that event the said sum of fifty thousand dollars ($50,000) shall be paid to and become the property of her children her surviving, share and share alike.

"I give and bequeath to my nephew Clarence Gould, of Toledo, Ohio, the sum of five thousand dollars ($5,000).

"Item XI. I give and bequeath to my nephews Charles L. Harrison, Arthur Harrison, and Robert D. Harrison, and to my niece Hazel Harrison, of Cape Girardeau, Missouri, and to each of them, the sum of five thousand dollars ($5,000).

"Item XII. I give and bequeath to my cousin Anna E. Reilly, of Toledo, Ohio, in case she survive me, the sum of fifteen thousand dollars ($15,000). In the event, however, that the said Anna E. Reilly does not survive me, I give and bequeath to her sister, Jennie K. Hopper, of Highland, New York, wife of Alfred Hopper, if she be living at that time, the said sum of fifteen thousand dollars ($15,000) ; and in the event of the death of both said Anna E. Reilly and Jennie K. Hopper before my death I give and bequeath to the children of Jennie K. Hopper her surviving, share and share alike, the said sum of fifteen thousand dollars ($15,000).

"Item XIII. I give and bequeath to my cousin Kate Earl, wife of William Earl, of Toledo, Ohio, the sum of five thousand dollars ($5,000).

"I give and bequeath to Georgia Allen Reilly, of Berkeley, California, widow of my cousin Clarence R.

Reilly, the sum of twenty-five hundred dollars ($2,500).

"Item XIV. It is my will and I hereby direct that there shall be paid to Nellie King, whose faithful service to my wife and to me has reached over a period of many years, the sum of nine hundred dollars ($900) per year, payable in equal monthly installments upon the first of each and every calendar month for and during the term of her natural life. Said payments shall be made by my executors during the administration of my estate, and thereafter by my trustee hereinafter appointed from the funds in their hands, arising from my residuary estate, as hereinafter defined. In the event that said Nellie King shall be living at the time of the final distribution of my estate it is my will and I hereby direct that my trustee or my executors, as the case may be, before such distribution is made, shall purchase from a standard life insurance company doing business within the state of Ohio an annuity in the amount aforesaid upon the life of said Nellie King payable to her.

"Item XV. I give and bequeath to my friend and business partner Frederick L. Geddes, of Toledo, Ohio, the sum of twenty-five thousand dollars ($25,000), if he survives me; in the event he does not survive me I give and bequeath the sum aforesaid to his wife Kate R. Geddes, and in the event that neither of the said Frederick L. Geddes nor Kate R. Geddes survive me I give and bequeath said sum to their children surviving at the time of my decease.

"Item XVI. I give and bequeath to Charles A. Schmettau and Lloyd T. Williams, of Toledo, Ohio, each the sum of five thousand dollars ($5,000).

"Item XVII. I give and bequeath to Raymond T. Garrison and Blanche I. Hutchins, of Toledo, Ohio, each the sum of twenty-five hundred dollars ($2,500).

"Item XVIII. I give and bequeath to Andrew Eng-

lert, of Castalia, Ohio, if he survives me,. the sum of twenty-five hundred dollars ($2,500), and to John C. Zollinger, of Sandusky, Ohio, if he survive me, the sum of one thousand dollars ($1,000).

"Item XIX. I give and bequeath to John Darby, of Toledo, Ohio, (long employed in the Toledo Club), the sum of five hundred dollars ($500).

"Item XX. I give and bequeath to my friend, the Reverend Charles Herr, of Toledo, Ohio, the sum of twenty-five hundred dollars ($2,500), the same to be used by him, either the income thereof or the principal, for his own personal use or for the aid and assistance of the poor of his parish, as in his uncontrolled discretion he thinks proper.

"Item XXI. I give and bequeath to my friend, the Reverend F. J. Hillig, formerly connected with St. John's University in the city of Toledo, Ohio, the sum of twenty-five hundred dollars ($2,500).

"Item XXII. I give and bequeath to my friend William B. Geroe, of Toledo, Ohio, the sum of ten thousand dollars ($10,000). I also give and bequeath to him my guns, rods, flies, lines, reels, and fishing tackle, of every description, and my lockers in the Castalia Club House at Castalia, Ohio.

"Item XXIII. I give and bequeath to The Castalia Trout Club Company my certificate of stock in said company, and do hereby authorize and direct my executors hereinafter named to endorse my certificate of stock in said company, and to deliver the same to the then president of said company, to be sold or disposed of in such manner as the officers of said company shall see fit, for the benefit of said The Castalia Trout Club Company.

"Item XXIV. I give and bequeath to Doctor Charles F. Tenney, of Toledo, Ohio, if he survive me, the sum of ten thousand dollars ($10,000).

"Item XXV. I give, devise and bequeath to my friend Francis R. Huntington, of Columbus, Ohio, such of my properties, real, personal or mixed, as shall be, at my decease, situate in the county of Gaspe, in the Province of Quebec, in the Dominion of Canada, including all leases of fishery and other rights pertaining to the Dartmouth River, together with all and singular the appurtenances thereunto belonging; and I hereby authorize, empower and direct my executors and my trustee to make, execute and deliver unto the said Francis R. Huntington any and all necessary or proper assignments, bills of sale, deeds or other instruments in writing conveying to him the property aforesaid.

"Item XXVI. I give and bequeath to my secretary John H. McNerney if he is in my employ at the date of my death, or if not in my employ if he is at that time in the military or naval forces of the United States of America, the sum of ten thousand dollars ($10,000).

"Item XXVII. I give and bequeath to my chauffeur George Kelly if he is in my employ at the date of my death, or if not in my employ if he is at that time in the military or naval forces of the United States of America, the sum of ten thousand dollars ($10,000).

"Item XXVIII. In the payment of the bequests herein contained, my executors and trustee are fully authorized and empowered to pay the same in whole or in part by a distribution in kind, of the property comprising my estate, at the then market prices of the property so distributed, or to convert any of said property into money and make distribution in whole or in part in money, as, in their discretion, may seem wise and proper, and this provision shall be so construed as to apply to any distribution made by my

trustee as hereinafter authorized as well as to the payment of the specific bequests herein made.

"With the exception of the bequest contained in item III hereof, and the devises and bequests of specific real and personal property, all bequests hereinbefore made shall be paid without preference one over the other, notwithstanding any provision herein contained concerning time or method of payment, and in the event there is insufficient property to pay said bequests in full, they shall be ratably decreased.

"Item XXIX. All the rest and residue of my estate herein called 'residuary estate,' I hereby give, devise and bequeath unto The Ohio Savings Bank & Trust Company, of Toledo, Ohio, herein called 'trustee,' and to its successors and assigns forever, in trust, however, for the following uses and purposes, viz.:

"I give and grant to my trustee full power and authority to sell, convey, exchange, lease or dispose of any and all of the property, both real and personal, devised and bequeathed to it as aforesaid, as well as any and all property which may be acquired by my trustee for said trust during the administration thereof, and to make, execute and deliver any and all instruments in writing necessary or proper to carry out any and all of the aforesaid powers. No sale or disposition in any manner of any of said property shall be made during the life time of my said wife Carrie L. Brown without her consent thereto made in writing and filed with my trustee.

"It is my wish and I recommend to my said trustee, in so far as it is practicable, that the securities owned by me at the time of my death be retained by them for the trust aforesaid, but this suggestion shall not be held in any way to limit or abridge the powers hereinbefore

given to my trustee or impose upon it any liability in the exercise of such powers.

"Moneys coming into the hands of my said trustee, whether by way of income or from the sale of any property made by it, or otherwise, not distributed by it under any of the provisions herein contained, may be invested by my trustee in securities or property which shall be at the time said investments are made legal investments for trust companies under the laws of the state of Ohio, or in its uncontrolled discretion may be invested in stocks or securities issued by corporations in which I may be a stockholder at the date of my death. All sales, purchases and investments by my trustee of the property aforesaid, and any and all other transactions made or had by my trustee, except ordinary and incidental transactions arising in the administration of said trust, shall be made only after same shall have been approved by a majority of the executive committee of my trustee, or such committee which for the time being is authorized or required to pass upon the general loans and investments of my trustee in its banking department.

"Item XXX. My said trustee shall hold my said residuary estate as aforesaid and receive the income therefrom, and should my said wife Carrie L. Brown survive me, said trustee shall, after the payment of the annuities hereinbefore provided for, pay to her upon her request, from time to time, from the net income from said residuary estate, such sums as she may designate up to and including all of said net income. If any surplus of income is not so withdrawn by my said wife in any year, the same shall during her lifetime remain as income and she may draw the same in any succeeding year. Any and all sums so received by my wife shall be hers absolutely and she shall not be held in any manner to account therefor.

"In the event the income from my residuary estate shall not be sufficient so that my wife shall receive, if she so desires, at least the sum of twenty-five thousand dollars ($25,000) in any calendar year, then upon her request, said trustee shall dispose of enough of the principal of said residuary estate to realize, when added to the net income for such year, said sum of twenty-five thousand dollars ($25,000), and my wife shall be entitled to such sum. It is my intention that my wife shall be entitled to receive and withdraw from said net income, and, if necessary, from the principal of said residuary estate, if she so desires, the full sum of not less than twenty-five thousand dollars ($25,000), in each year during her life.

"Any of such income of said residuary estate not withdrawn by my wife during her lifetime, shall become a part of the principal of said residuary estate upon her death, and shall be held and disposed of by my trustee as hereinafter provided.

"Item XXXI. My trustee shall for a period of two years from and after the death of my wife if she survive me, or in the event my wife does not survive me, then for a period of one year after said residuary estate is turned over to my trustee, hold said residuary estate and distribute and pay semi-annually the net income derived therefrom to the following named corporations and associations and in the percentages set opposite their respective names, viz:

"Toledo Hospital          twenty-three (23) per centum
"The Toledo Museum of
    Art                   five (5) per centum
"The Young Women's
    Christian Ass'n.      seventeen (17) per centum
"The Young Men's
    Christian Ass'n.      ten (10) per centum
"St. Vincent's Hospital seven (7) per centum

"'Toledo Branch of the
American Red Cross    five (5) per centum
"'The Maternity and
Children's Hospital    four (4) per centum
"'The Mercy Hospital    three (3) per centum
"'The Flower Deaconess
Home & Hospital    three (3) per centum
"'The Toledo News Boys
Association    three (3) per centum
"'The Old Ladies Home three (3) per centum
"'Toledo District Nurse
Association    two (2) per centum
"'The Toledo Federation
of Jewish Charities    two (2) per centum
"'The Little Sisters of
the Poor    two (2) per centum
"'The Toledo Colored
Working Girls Home two (2) per centum
"'The Old Adams Street
City Mission and Day
Nursery    two (2) per centum
"'North Toledo Settle-
ment    two (2) per centum
"'The Local Branch of
the Salvation Army    two (2) per centum
"'Florence Crittenden
Home for Girls    one (1) per centum
"'Luella Cummings
Home for Girls    one (1) per centum
"'The Thalian Society    one (1) per centum

[In copying, all addresses have been omitted]

"No bequest to any of the above mentioned cor-
porations and associations hereinbefore or herein-
after made shall be invalidated or in any wise affected
by the fact that any such corporation or association

has not been designated herein by its proper corporate or official name; and my trustee is authorized and directed to, and may, without any liability on its part, pay said bequests to the corporations and associations which by common usage bear the names aforesaid.

"At the expiration of the period during which it is hereinbefore provided said residuary estate is to be held by my trustee, said residuary estate to an amount not in excess of one million dollars ($1,000,000) shall be distributed among and paid to the corporations and associations mentioned as beneficiaries under this item 'ratably according to the percentages herein set forth.

"XXXII. In the event that after the full distribution of the sum of one million dollars ($1,000,000) from my residuary estate as hereinbefore provided for, said residuary estate is not exhausted, the remainder and residue thereof shall be distributed and paid by my trustee to the legatees hereinbefore mentioned, except those mentioned in Items II, III, IV, XIV, XXIII and XXV hereof, pro rata in the proportion that the bequest made herein to each of said legatees bears to the aggregate sum of all of said bequests, and the provisions contained in said items respectively with reference to succession in interest in and to the bequests aforesaid shall apply to the payment and distribution in this item provided for.

"Item XXXIII. I hereby nominate and appoint Frederick L. Geddes, James C. Blair and The Ohio Savings Bank & Trust Company, all of Toledo, Ohio, executors of this my last will and testament; in the event that said The Ohio Savings Bank & Trust Company is for any reason unable to act, then, in its stead, I nominate and appoint the person who at the date of my decease is the acting trust officer thereof.

"I request that the Probate Court may not require the individual executors aforesaid to give bond in excess of the sum of fifty thousand dollars ($50,000) each; and request that each of said individual executors give bond in the amount aforesaid.

"A majority of the executors aforesaid may exercise any and all of the powers conferred upon them by this will or by the laws of the state of Ohio.

"I hereby authorize said executors to compromise, adjust, release and discharge in such manner as they may deem proper the debts and claims due me.

"I further authorize and empower them to sell or exchange on such terms and at such prices as may seem to them proper, any or all of my real and personal property, and to execute, acknowledge and deliver bills of sale, assignments, contracts and deeds conveying such real estate in fee simple, and transferring and assigning good title to said personal property; and also to carry out and complete any contract for the sale of any such real estate that I have made.

"In the payment by my said executors of the bequests provided by the terms of this will, wherein an inheritance tax is or may be charged, I do hereby order that my said executors pay such inheritance tax from the body of my estate, and that said bequests be paid to the various persons named above, free and clear of such tax."

In the petition the plaintiff trustees presented nine separate questions for answer by the court, touching sundry alleged ambiguities in the foregoing will, but we understand that by general agreement certain earlier disputed matters are eliminated and that the answers to the two questions first hereinbefore referred to will bring the answers to all remaining questions posed so far as this proceeding and the appeal are concerned. While these two questions, on the face,

are simple and restricted in their scope, the answers thereto are fraught with great significance to the interested parties because of the amount involved. However, the same rules of construction and interpretation are to be applied as would be if the amount were a thousandth part as large.

Within the proper limitations of this memorandum, it will not be possible to do much more than answer the questions above propounded, with our reasons for the conclusions represented by the answers.

To the first question, *viz.*, did the individual legatees named in the will receive a vested or contingent interest in the bequest set up in item XXXII, our answer is they received a vested interest, and we understand this construction is no longer seriously disputed.

The second question is: Are the corporations and associations (the charities) named in item XXXI to share with the individual legatees in the distribution of the "remainder and residue" of the residuary estate referred to in item XXXII? This presents the paramount issue between the contending claimants and is the subject to which the oral arguments and briefs almost exclusively have been addressed. Our answer is that they do so share and we shall state, as briefly as possible, our reasons for that conclusion.

The intention of the testator is to be ascertained as of the time when he executed this will. Mr. Brown then knew approximately his own net worth. His death following within a few weeks thereafter, he was never to know the incredible increase in value of his holdings by the time of final distribution, which he had fixed at two years following the death of his wife. Her expectancy of life, under mortality tables, was about twelve years at the time he executed this will. She lived twenty-two years after his death and was paid several million dollars in income from the estate, of

which she had the whole income during her life, in addition to the specific bequests given her in the will. It is evident from the whole will, particularly items II, III, XXVIII and XXX, that his first thought was to make certain her comfort and security.

His next thought appears with the same degree of clarity to have been the remembrance, with bequests which he deemed commensurate with his natural and moral obligations to them respectively, of his relatives, his wife's relatives, his business associates, his close friends and faithful employees. These bequests totaled $306,500. His estate then being approximately of the value of $2,000,000, he could have given these relatives, associates, friends and employees amounts many times as large, if it had been a case of a childless man seeking merely to unload the remainder of his estate, after making certain the security of his wife. But this he did not do.

On the contrary, after making certain the comfort and security of his wife, and then giving to relatives, business associates, close friends and faithful employees remembrances which he deemed proper and adequate, his next thought was of the community in which he had lived and prospered. By what method could he best express his gratitude and good will to the community and all the citizens, the high and the low, the poor as well as the rich?

The method he chose was studied and unique. He selected twenty-one organizations, representing practically all charity work in Toledo, and through them expressed what he wished to say to all the citizens of his community, and he thereupon gave to that group approximately 75 per cent of his then fortune, plus the income from the residuary estate for two years after his wife's death.

It is so obvious as to be beyond dispute that in the disposition of his known fortune, Mr. Brown had a "general testamentary scheme or plan," a general "scope and purpose" as shown by the whole will, and it is established law that the construction given to any part of the will should conform to the general scheme, plan, scope and purpose of the whole will whenever possible. *Richey, Exr.,* v. *Johnson,* 30 Ohio St., 288, 292; *Parker* v. *Parker's Admr.,* 13 Ohio St., 95, 105; *Tax Commission* v. *Oswald,* 109 Ohio St., 36, 49, 141 N. E., 678; 3 Jarman on Wills (7th Ed.), 2144.

It is apparent from several expressions used in the will that the testator thought it possible that the bequests to the charities in the last paragraph of item XXXI might consume the residuary estate. However, to make sure that he would not die intestate as to any property, he wrote item XXXII, and it is this item, when read and considered with item XXXI, that is the basis of this controversy.

In item XXXI the trustee is directed to hold the residuary estate for a period of two years following the death of Mrs. Brown and pay semi-annually the net income derived therefrom to twenty-one certain corporations and associations engaged in charitable work in Toledo, naming them and giving to each the respective percentage indicated of the net income.

The real controversy herein begins with the last sentence of that item which says:

"At the expiration of the period during which it is hereinbefore provided said residuary estate is to be held by my trustee, said residuary estate to an amount not in excess of one million dollars ($1,000,000) shall be distributed among and paid to the corporations and associations mentioned as beneficiaries under this item ratably according to the percentages herein set forth."

This is quoted again because the individual legatees

point to the words "an amount not in excess of one million dollars," and assert that by it Mr. Brown limited the amount the charities are to get out of the entire estate no matter how large it may be. When the whole sentence is read, in the light of the condition of his estate at the time he wrote the will, it does not say that. At that time there was enough to provide the million dollars and a little more. What that does say, in effect, is that if at the time of final distribution the estate exceeds one million dollars, the charities are to have "not in excess of one million dollars" distributed to them "ratably according to the percentages herein set forth." That is all they can have on that basis. When it is all read and given the intended meaning, it in no way precludes the charities from further participation on some other basis in the remainder of the residuary estate, if there is one.

The question then arises: Does item XXXII give them anything? It does, if they are "legatees."

For the benefit of the estate and to make certain the provisions for Mrs. Brown, the charities' enjoyment of their respective shares in the million dollars was postponed to a time that was sure to come, *viz.*, two years after the death of his wife. Upon the death of the testator their right to the gifts vested. *Ohio National Bank* v. *Boone,* 139 Ohio St., 361, 40 N. E. (2d), 149. There was a contingency as to the amount that might be available for them, but the same was true as to every devisee and legatee except Mrs. Brown. The last sentences of item III and item XXVIII imposed such contingencies upon all of them. A time delay was placed upon some of the individual legatees as well as the charities, by items IV, V, VI, VII and XIV.

That the executors' work might be ended with the complete administration of the estate before all of the legacies had been paid was recognized in those items

specifically, and generally as to all of them in item XXVIII. If not then paid, the then trustee was told to pay them, and this could only be done by the trustee from the trust estate, and some of them were in fact so paid. Certainly they will participate in item XXXII on the basis of all they received.

It is clear that Mr. Brown neither intended nor made any distinction between the individual legatees and the charities with respect to any of these decisive characteristics, *viz.*, contingency as to amount, times of payment or fiduciary by whom paid.

Under the Ohio rule, the charities are legatees as to the million dollars as clearly as were the individual beneficiaries. This, coupled with the important fact that the testator carefully excepted from the "remainder and residue" provision of item XXXII the legatees mentioned in certain items, but not those in item XXXI, clearly includes the charities as "legatees hereinbefore mentioned," and as such entitled to participate in the "remainder and residue" of the residuary estate, but on a different basis from their respective shares in the million dollars. That is, the basis for this becomes the million dollars plus the $301,500, the aggregate of the legacies not excepted in item XXXII. This conclusion harmonizes with the whole plan of the testator as indicated by all of the will preceding item XXXII.

The income provision and the distribution of "not to exceed one million dollars" were done, cleaned up and disposed of on a percentage basis in item XXXI. Not knowing whether there would be anything further to distribute, but to make provision for such eventuality, he wrote item XXXII and included all "legatees hereinbefore mentioned," not excluding the charities named in item XXXI, as the ones to share in any residue, but upon a different basis, a pro rata basis. We are unable to see how any limitation placed by the

testator on item XXXI can properly be read into the distribution to be made under item XXXII. The limitation in item XXXI indicates the maximum amount to be distributed to the charities before they and the other legatees come in to share in the final residuum under item XXXII, "in the event" there is such residuum. This interpretation appears to the court to be consistent with the tenor and purpose of the entire will, and is arrived at without adding to or taking away any word, sentence or phrase of the testator's own language.

The conclusion reached on the principal questions render other minor questions earlier made unimportant.

*Decree accordingly.*

LLOYD and CARPENTER, JJ., concur.