CASE 108—PETITION EQUITY—January 28.

## Webster's Trustee, &c., v. Webster.

### APPEAL FROM HARDIN CIRCUIT COURT.

1. CONSTRUCTION OF DEVISE.—Under a devise by a testator to his daughter, with the provision that "in case" she "should die without children" the estate devised to her should go to his surviving children, the daughter took an absolute estate, subject to be defeated only in the event of her death without children before the period of distribution ; and the fact that the testator appointed a trustee for his daughter, with direction to appropriate merely the interest of the estate to her support, is not inconsistent with an absolute estate.

2. TERMINATION OF TRUST.—As the testator's only reason for confiding his daughter's share of his estate to a trustee was his belief that she was not mentally and physically competent to manage it with prudence, if he was mistaken as to her condition, or should her health so improve as to render her mentally and physically com-

Webster's Trustee, &c.. v. Webster.

petent, the chancellor should remove the trustee and confide the
estate to her control.

W. P. D. BUSH and HOBSON & O'MEARA for appellants.

1. In construing a will parol evidence will be admitted to enable the
court to give the testator's language such an interpretation as it is
reasonable to presume from the circumstances in which he was
placed he intended it should receive ; or to put the court in the
place of the testator.   (1 Redfield on Wills, 496.)

2. The intention of the testator is the law of his will, and it is a car-
dinal rule in the construction of wills that the intention is to be
collected from the whole will, and that the intention thus ascer-
tained must prevail if it be agreeable to the rules of law. (Daniel
v. Thompson, 14 B. Mon., 541 ; Richardson v. Noyes, 2 Mass., 56 ;.
s. c., 3 Am. Dec., 24.)

3. In the case at bar the intention of the testator is plain, if you take
all the provisions of the will together and in the light of the cir-
cumstances then surrounding him.   But if the testator's inten-
tions were not so apparent, in the absence of facts showing a con-
trary intention the language used in this will would be held, under
the well-settled rules of construction, to create in Mrs. Webster a
defeasible fee that will be defeated at any time by her death with-
out issue.   (Thackston v. Watson, 84 Ky., 206 ; Britton v. Thorn-
ton, 112 U. S., 526 ; Parish v. Farris, 6 Ohio St., 563 ; Jones v.
Miller, 13 Ind., 337 ; Abbott v. Essex, 18 How. (U. S.), 202 ; Holmes
v. Williams, 1 Root, 335 ; s. c., 1 Am. Dec., 49 ; Richardson v.
Noyes, 2 Mass., 56 ; Jackson v. Blancham, 3 Johns., 292 ; s. c., 3
Am. Dec., 485 ; Anderson v. Jackson, 16 Johns., 382 ; s. c., 8 Am.
Dec., 330 ; Garland v. Watt, 4 Ired. Law, 287 ; s. c., 42 Am. Dec.,
120 ; Spruil v. Moore, 5 Ired. Eq., 284 ; s. c., 49 Am. Dec., 428 ;·
Sims v. Congeor, 39 Miss., 231 ; s. c., 77 Am. Dec., 671 ; Alender
v. Sussen, 33 Md., 11 ; s. c., 3 Am. Rep., 171 ; Hill v. Hill, 74 Pa.
St., 173 ; s. c., 15 Am. Rep., 545 ; Daniel v. Thompson, 14 B. Mon.,
533 ; Harris, &c., v. Berry, &c., 7 Bush, 113 ; Sale, &c., v. Crutch-
field, 8 Bush, 636 ; Moran v. Dillahay, 8 Bush, 434 ; Best v. Conn,
10 Bush, 36 ; Bayless v. Prescott, 79 Ky., 252 ; Bradley v. Skill-
man, 3 Ky. Law Rep., 734 ; Hayden, &c., v. Wilson, 4 Ky. Law
Rep., 827 ; Turpin v. Turpin's Adm'r, 4 Ky. Law Rep., 438 : Cleve-
land v. Cleveland, 5 Ky. Law Rep., 56 ; Bryant v. Bryant's Ex'or,
6 Ky. Law Rep., 293 ; Ecton v. Smith, 6 Ky. Law Rep., 216 ; Mil-
ler's Ex'or v. Simpson, 8 Ky. Law Rep., 518.)

The cases of Wills v. Wills, 85 Ky., 486 ; Trabue v. Terry, 10
Ky. Law Rep., 345, and Binney v. Richardson, 5 Dana, 424, dis-
tinguished from the case at bar.

4. The lower court properly refused to discharge the trust and place
the funds in appellee's hands.   This was not a dry trust, which

the court may disregard, but one involving large discretionary powers, in which the remaindermen were interested. (Battle v. Petway, 5 Ired. Law, 576; s. c., 44 Am. Dec., 59; Turnage v. Green, 2 Jones Eq., 63; s. c., 62 Am. Dec., 208; Ellis v. Fisher, 3 Sneed, 231; s. c., 65 Am. Dec., 52; Freeman's Notes to Kay v. Scates, 78 Am. Dec., 406.)

HARGIS & EASTIN and JAMES MONTGOMERY for appellees.

1. The estate of the testator's daughter, Euphemia, became absolute upon the arrival of the period fixed for distribution. (Cunningham v. Wathen, &c., MS. Op., Dec. 11, 1884; Wills v. Wills, &c., 85 Ky., 489; 2 Fearne on Remainders, &c., p. 347, secs. 662–3.

2. The testator did not intend the trust to be perpetual. A trust created from necessity, or for a special purpose, will cease with the necessity which gave rise to it or upon the accomplishment of the special purpose. (Thomas v. Harkness and Wife, 13 Bush, 29; Doe d. White v. Simpson, 6 East., 162; Doe d. Player v. Nichols, 8 Eng. Com. Law, 93; Perry on Trusts, secs. 653, 843; Griffith v. Griffith, 6 B. Mon., 119.)

WM. J. HENDRICK on same side.

1. The question of construction is now *res judicata*. (Cunningham v. Wathen, MS. Op., Dec. 11, 1884.)

Having once before construed this will, this court will not now, on a second appeal, allow the question of construction as there determined to be re-opened. (Davis v. McCorkle, 14 Bush, 734; Williams v. Rogers, 14 Bush, 781; Jones v. Commercial Bank, 78 Ky., 424; Smith v. Brannin, 79 Ky., 119.)

2. The testator intended the trustee only for the *interim* that would elapse between the publication of the will and "the time of the final distribution of his estate," as provided by him. There is nothing to warrant the conclusion that the testator intended to shackle the portion of his daughter, Euphemia, and unfetter all the rest of his estate, as this would prevent equality, which was the thought uppermost in the testator's mind.

JUDGE BENNETT delivered the opinion of the court.

The will of A. R. Cunningham makes the following provisions in reference to his five children :

"*Third*—I have advanced to my son-in-law, William E. Curd, and my daughter, Lizzie Curd, his wife, the sum of $10,000, and they are not to receive anything further from my estate until my wife receives the amount

herein devised to her, and until all my other children, to-wit: Euphemia R. Cunningham, Hettie Cunningham, Sallie Cunningham and Malvina Cunningham, shall each receive from my estate $10,000, so as to make them equal with my said daughter, Lizzie Curd, wife of said William Curd.

"*Fourth*—I have advanced to my daughter, Euphemia R. Cunningham $1,018.11, with which sum she is to be charged in making up her $10,000, to make her equal with my daughter, Lizzie Curd, and she is to account in the same manner for any future advancements made by me to her.

"*Fifth*—I will and devise to my daughter, Hettie C. Cunningham, $10,000, to make her equal with my daughter, Lizzie Curd, and she is to account out of said sum for any advancements made by me to her after she becomes twenty-one years of age.

"*Sixth*—I will and devise to my little daughter, Sallie Cunningham, $10,000, to make her equal with my said daughter, Lizzie Curd, and $3,000 in addition thereto as a fund to raise and educate my said daughter, Sallie, she being an infant of tender years.

"*Seventh*—I will and devise to my little daughter, Malvina H. Cunningham, $10,000, to make her equal with my said daughter, Lizzie Curd, and $3,000 in addition thereto as a fund to aid in educating and raising my said daughter, Malvina, she being an infant of tender years. I make these additional devises to my two youngest children, Sallie and Malvina, to aid in raising and educating them, because of the fact that I made no charges against my other children for raising and educating them."

*Eighth*—The residue of his estate he wills and devises

to his said "five children, to be equally divided among them," etc.

"*Ninth*—In case either of my daughters, Sallie or Malvina H. Cunningham, shall die without children, then and in that event the survivor is to have the entire estate devised to both of my said children in this will.

"*Tenth*—In case either of my daughters, Euphemia R. and Hettie C. Cunningham, should die without children, then and in that event it is my will, and I so direct, that *the estate* of the one dying shall be equally divided among all my then living children."

*Eleventh*—The testator appoints his wife "trustee and guardian" for his daughters, Sallie and Malvina Cunningham.

"*Twelfth*—I hereby appoint George L. Miles trustee and guardian for my daughter, Hettie C. Cunningham, and authorize and empower him to receive and receipt for any money or estate that may be coming to my said daughter, Hettie, under and by virtue of this will, to loan the same, to collect the interest and use the same in support and maintenance of my said daughter, and if there be any surplus to re-invest the same.

"*Thirteenth*—I hereby appoint James W. Hays trustee for my daughter, Euphemia R. Cunningham, to receive and receipt to my executor for any money or estate that may be coming to my daughter from my estate under this will, to keep the same at interest, and to collect the said interest and appropriate it to the support of my said daughter, and if there be any surplus interest to re-invest the same."

The question to be decided is, does Euphemia Webster, formerly Cunningham, take under the will an absolute

estate, subject to be defeated if she dies without living children, or does she take a life estate only? The testator appointed the mother of Sallie and Malvina H. Cunningham their trustee and guardian. He also appointed George L. Miles trustee and guardian of Hettie C. Cunningham, who was a minor. He appointed James W. Hays trustee of Euphemia R. Cunningham, who was an adult.

In the case of Cunningham v. Wathen (MS. Op. December 11, 1884), an action brought to construe the provision of this will in reference to the estate that Hettie C. Cunningham, then Wathen, took under the will, this court held that the fifth and eighth clauses of the will vested in Hettie C. Cunningham an absolute estate, and the provision in the tenth clause, "should she die without children," manifestly referred to the time of distribution of the estate, which was "to be on the arrival of the devisee at the age of twenty-one. To give the tenth clause any other meaning would be to charge by implication an unqualified estate to the devisee."

The third, fourth and eighth clauses of the will as clearly give to Euphemia an absolute estate, as do the fifth and eighth clauses to Hettie C. There is but one limitation placed upon either estate, to-wit: that of dying without living children, which limitation this court construed in the case *supra* to mean death, before the distribution, without living children. But it is said that Euphemia, being of age, and the direction that her estate should be placed in the hands of a trustee with power to expend for the support of Euphemia, not exceeding the interest of her estate, made the devise unlike that to Hettie C., and vested her

with a life use only. But, as said, the only limitation upon the absolute estate was the dying without living children; and it is believed that the testator meant that limitation to be. the only one upon the absolute estate, and to confine its operation to the time of the distribution of the estate. The limitation clearly means that should Euphemia have living children before distribution she would take an absolute estate subject to be defeated, if she and the children died before distribution. And taking this clause in connection with the preceding ones quoted, there can be no manner of doubt that the estate devised was an absolute estate subject to the one limitation indicated. The appointment of a trustee to take charge of the estate and to limit its expenditure upon Euphemia, was evidently in view of the fact that the testator did not regard her as competent to take care of it, and the appointment is not incompatible with an absolute estate to the devisee. Now, it seems that as the testator's only reason for confiding the estate to the control and management of a trustee was the belief that Euphemia was not mentally and physically competent to manage it with prudence, and that had she, in his opinion, been competent, he would not have confided it to a trustee, therefore it would seem that if the testator was mistaken in Euphemia's condition, or should her health so improve as to render her mentally and physically competent, the chancellor should have the power to remove the trustee and confide the estate to her control.

The judgment in reference to the construction of will is affirmed.