*HARRIET C. ROBBINS V. AMOR SMITH, ADMR., ET AL.

1. RULE FOR INTERPRETING WILLS.
A will is to be interpreted by its express provisions, and when no ambiguity exists in such express provisions, the mere fact that we cannot understand why the testator so provided, or such provision is contrary to what we might have expected, does not justify putting a construction on said will different from the plain import of the words therein used.

2. CONSTRUCTION OF WILL DEVISING INCOME OF PROPERTY, ACCOMPANIED BY POWER OF APPOINTMENT BY WILL OF LEGAL TITLE, WITH REMAINDER OVER, IN DEFAULT OF APPOINTMENT.
The will of Edward Harwood provided that two-thirds of his estate should be equally apportioned amongst his children, but should not be paid over to them, but be safely invested for their behoof; and the annual income arising to each child be subject to her control, whether married or unmarried, and in no instance should the husband of any such child have any power or control over the principal or interest of such share; nevertheless, each to have power and authority to will and devise her portion as she shall see fit; in case of either dying without leaving a will her portion to be equally divided between her children who may survive her. or if she have no children surviving her. then the said portion to be paid to the testator's children who may survive her share and share alike. One of the three children is now dead: . Held, the trusts created therein and the provisions creating them are not mutually repugnant, and where the objects of such trusts are still possible and have not been fully accomplished, the same will not be terminated by decree in equity, notwithstanding the desire and contract of those presently interested.

3. WANT OF TRUSTEE DOES NOT DEFEAT TRUST.
Equity will not let a trust fail for want of technical words in its creation or for want of a trustee.

4. LIFE ESTATE ONLY DEVISED.
Under said will the children took but an estate for life in the body of the estate.

5. EFFECTS OF CHILD DYING INTESTATE.
In the event of any of said children dying intestate and failing to exercise the power given in the father's will, her share passes in accordance with the provisions of the father's will.

6. MARITAL TRUST MERELY NOT CREATED.
The reference to husbands did not create a marital trust merely.

7. EQUITY CONTINUES TRUST DURING LIFE OF CESTUI QUE TRUST.
Equity never continues a trust for the benefit of the trustee, but inasmuch as the trusts herein cannot sooner be deemed completely fulfilled, the trust as to each child will be continued during her life.

APPEAL from common pleas.

J. W. Warrington and C. B. Matthews, for plaintiff.

*Affirmed by Supreme Court, February 28, 1905, 50 Bull. 94.

Hamilton County.

**Harlan Cleveland** and **Albert Bettinger,** for Amor Smith and Mr. French:

"Second. The remaining two-thirds of my estate shall be equally apportioned amongst my children, but shall not be turned over to them, but shall be safely invested for their behoof; and the annual income arising to each child shall be subject to her control, whether married or unmarried, and in no instance shall the husband of any such child have any power or control over the principal or interest of such share; nevertheless, each of my children shall have full power and authority to will and devise her portion of said inheritance in such manner as she shall see fit.

'Third. In case of either of my children dying without leaving a will, then her portion of said inheritance shall be equally divided between her children who may survive her, or if she have no children surviving her, then the said portion shall be paid to my children who may survive her, share and share alike."

The construction heretofore placed upon the will by all the parties interested in it is the correct one, and should not be disturbed. *Mathews* v. *Meek,* 23 Ohio St. 272; *James* v. *Pruden,* 14 Ohio St. 251; *Baxter* v. *Bowyer,* 19 Ohio St. 490; *Davis* v. *Boggs,* 20 Ohio St. 550; *Johnson* v. *Johnson,* 51 Ohio St. 446 [38 N. E. Rep. 61] ; *Greene* v. *Greene,* 1 O. S. C. D. 679 (38 Bull. 205) ; affirmed, without report, *Greene* v. *Green,* 57 Ohio St. 628; *Howe* v. *Fuller,* 19 Ohio 51; *Stableton* v. *Ellison,* 21 Ohio St. 527, 533; 2 Jarman, Wills 856.

Supplemental proceedings and termination of the trust by agreement. *Matthews* v. *Davis,* 39 Ohio St. 54; *Yoeman* v. *Lasley,* 36 Ohio St. 416; *Wagner* v. *Railway,* 38 Ohio St. 32; *Bullock* v. *Kilgour,* 39 Ohio St. 543; *O'Kill* v. *Campbell,* 4 N. J. Eq. 13; *Kent* v. *Armstrong,* 6 N. J. Eq. (2 Halst. Ch.) 559; *Cantine* v. *Browne,* 46 N. J. Law 599; *Martin* v. *Fort,* 83 Fed. Rep. 19; *Wilks* v. *Burns,* 60 Md. 64.

**R. P. Hargitt,** for Mrs. French.

**JELKE, J.**

The last will and testament of Edward Harwood is as follows:

"*In the name of God, Amen:* I, Edward Harwood, of the city of Cincinnati, Hamilton county, state of Ohio, being in moderate health and of sound mind and memory, do make and declare this my last will and testament, hereby revoking and making null and void all wills and testaments by me heretofore made:

Robbins v. Smith.

"First. I give, devise and bequeath to my dear wife, Julia Anne Harwood, the third part of all my estate of every *kind, whether consisting of real estate, moneys, debts, merchandise, furniture, or of whatever other description and character said property may be.

"Second. The remaining two-thirds of my estate shall be equally apportioned amongst my children, but shall not be paid over to them, but shall be safely invested for their behoof; and. the annual income arising to each child shall be subject to her control, whether married or unmarried, and in no instance shall the husband of any such child have any power or control over the principal or interest of such share; nevertheless, each of my children shall have full power and authority to will and devise her portion of said inheritance in such manner as she shall see fit.

"Third. In case either of my children dying without leaving a will, then her portion of said inheritance shall be equally divided between her children who may survive her, or if she have no children surviving her, then the said portion shall be paid to my children who may survive her, share and share alike.

"Fourth. I do hereby appoint my said wife, Julia Anne Harwood, executrix of this my last will and testament, so long as she shall remain unmarried.

"Fifth. I do hereby appoint William Henry Brisbane, of Arena, Wisconsin, and Frederick Dallas, of Cincinnati, to be the advisors of my said wife, hereby requiring her to obtain their consent and cooperation as to the general management of my estate.

"Sixth. In the event of the marriage or death or refusal or disability of my said wife to act as executrix, I hereby appoint the said William Henry Brisbane executor of this my last will and testament; and in the event of the death or refusal to act of the said William Henry Brisbane, I do hereby appoint the said Frederick Dallas executor of this my last will and testament.

"In witness whereof, I have hereunto set my hand and seal at Cincinnati aforesaid this twenty-fourth day of August, A. D. eighteen hundred and sixty-seven.

　　　　　　　　　　　　　　　　"EDWARD HARWOOD (L. S.)

"The above instrument on one sheet of legal cap paper was now here subscribed by Edward Harwood, the testator, in the presence of each of us, and was at the same time declared by him to be his last will and testament, and we as witnesses sign our names hereto as witnesses.

　　　　　　　　　　　　　　　　"J. F. LARKIN,
　　　　　　　　　　　　　　　　"J. W. WEAKLEY, JR.

Hamilton County.

"CODICIL.

"I do hereby nominate, constitute and appoint my much esteemed friend, David Munroe Marsh, my executor to assist my dear wife in the management of my estate and the execution of my last will and testament, and in case of her decease or disability for him to continue the management and execution of the same.

"And I do hereby declare this to be a codicil to my last will and testament, which bears date the twenty-fourth day of August, eighteen hundred and sixty-seven (1867). And I do hereby direct that it shall be received and considered as part of my said will.

"Witness my hand and seal, dated at Cincinnati, this twenty-eighth day of April, eighteen hundred and seventy-four.

"EDWARD HARWOOD (L. S.)

"CODICIL.

"I, Edward Harwood, the within named testator, do hereby make and publish this codicil to my last will and testament bearing date the twenty-fourth day of August, A. D. 1874, in the manner following, to wit:

"Whereas, I hold a certain note of hand for the sum of six thousand three hundred and fifty-seven 96-100 ($6,357.96) dollars made by John W. Langley, dated January 1, 1872, and payable one day after date, now I do hereby release and discharge the said Langley, his heirs and legal representatives, from the payment of any sums of money due and owing me at the date of my death, or that may become due after my death, for and on account of interest due on said note, and I direct my executors to credit all moneys heretofore or that may hereafter be paid by the said Langley to the liquidation of the principal of said note, and when the sum of $6,557.96 has been paid, I direct the note to be delivered to said Langley, and I further request and instruct my executors not to press or harass the said Langley for the payment of said note, trusting, however, that the said Langley, should he ever be able, will promptly pay all sums then unpaid upon said note on account of interest, which payment shall be left to his sense of honor and to his individual judgment.

"In witness whereof, I have to this codicil annexed to my said will set my hand and seal the eighth day of May A. D. 1874, to the end that the same may be annexed to and made a part of my last will and testament.

"EDWARD HARWOOD (Seal.)

"I, Edward Harwood, having on the fourth day of October, 1875, duly made and executed my last will and testament therein constituting,

Robbins v. Smith.

Julia Harwood, my then wife, the executrix therein, and my said wife having since the date thereof departed this life, leaving me her surviving, therefore, being still of sound mind, do hereby substitute in place of my said deceased wife to be the executor of my last will and testament my son-in-law, Maynard French, and do hereby declare it to be my will and intent that as in said will declared in respect to my said wife that he be not required to give bond or surety as such executor, the same being dispensed with, and I do hereby declare this to be part of my said last will and testament and to take effect as such.

"In witness whereof, I sign and hereby execute these presents.

"E. HARWOOD (Seal.)"

We are required to construe this will in order to determine what estates Harriet C. Robbins, Gertrude Gordon and Adaline French, who were Edward Harwood's daughters and only children and heirs at law, took thereunder.

The ability, learning and research of counsel on both sides of this case command our admiration and respect. In the oral discussion some one said that the court below had not given adequate consideration to the canons of construction, the principles of interpretation and rules of law to which its attention had been called, but had brushed them all aside, saying that this will was too clear for argument. In sympathy with and in defense of the court below, we want to say that in a case of this kind there is nothing so mind satisfying as a natural, unaided first impression. After reading the long, scholarly briefs of counsel and examining the many authorities cited, after looking at different parts of the will in the light of almost every known rule of construction, the mind is grateful to have a clear first impression to hark back to. The value of these natural impressions in the interpretation of documents, and especially of a will not drawn by a lawyer, is shown in an article on "The Theory of Legal Interpretation," by Professor Oliver Wendell Holmes, now United States justice, in 12 Harv. Law Rev. 417:

"Thereupon we ask, not what this man meant, but what those words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used, and it is to the end of answering this last question that we let in evidence as to what the circumstances were. * * * So in the case of a will. It is true that the testator is a despot, within limits, over his property, but he is required by statute to express his commands in writing, and that means that his words must be sufficient for the purpose when taken in the sense in which they would be used by the normal speaker of English under his circumstances."

Let us, then, on this basis and before examining the cases, and without having recourse to rules, see what impression we get from the will itself.

"The remaining two-thirds of my estate shall be equally apportioned amongst my children." "Apportioned," that is, divided, cut up into portions, parts or shares, and each part or share to be set off to a particular child, and if the will stopped there, we would say given over absolutely to such child; but the will immediately puts a stop to this latter idea by saying, "but shall not be paid over to them."

After the apportionment into shares, if these shares are not to be paid over to the children, what is to become of the shares? This forbidding their payment to the children is a negative provision and does not tell where these shares are to remain or where to go.

"But shall be safely invested for their behoof." This tells what use is to be made of the shares and what is to be done with them, but does not tell where the title of the shares is to rest or who is to safely invest them. The word, "behoof," means benefit, or use; and here we get the first suggestion of a trust. A trust is not lightly to be engrafted upon an estate, and yet if the testator intended to create a trust, although he has failed to do so in express terms and neglected to name a trustee as such, equity will not let a trust fail for want of a trustee. With this suggestion we look further in the will to see if we can find the testator had anybody in mind who should act as trustee. In item fourth he names his wife, Julia Anne Harwood, executrix, *so long as she shall remain unmarried*. Here is an intimation that the duties to be performed by his widow would in all probability be of longer duration than the mere administration upon the estate. That testator had something of this kind in mind is further manifested by item fifth: "I do hereby appoint William Henry Brisbane, of Arena, Wisconsin, and Frederick Dallas, of Concinnati, to be the advisors of my said wife, hereby requiring her to obtain their consent and co-operation as to the general management of my estate." His widow was to have more to do than simply administer the estate according to law and subject to the direction of the probate court; she was to have the management of the estate in such a manner as to need the consent and co-operation of his two friends. This idea persists and is made more obvious in the first codicil, where he speaks of the "management of my estate" and the "execution of my last will and testament."

Whether testator had or had not in his mind a trust in any technical sense, it seems manifest that whatever holding or withholding there was to be of the shares so apportioned, was to be by the same person

Robbins v. Smith.

appointed executrix or executor, and that person was to do the safely investing for his children's behoof. This, then, made a trust, and we must look further into the will to see how the whole estate is divided up, how much of the estate is vested in the trustee and what is the nature of her trust and what estate is given to the *cestuis que trustent.*

"And the annual income arising to each child shall be subject to her control, whether married or unmarried." From this it seems that it was the testator's intention that so far as his daughters' interest or relation to his estate, they were to occupy exactly the same position, and always provided the income was paid to his children, it made no difference whether they were married or unmarried. It would seem as though this language would rebut the suggestion that this was only a marital trust. "And in no instance shall the husband of any such child have any power or control over the principal or interest of such share." The expression, "principal or interest," is a layman's expression of emphasis, as we would say, "he is to let it alone, 'lock, stock and barrel.'"

We now come to a most significant part of item second: "Nevertheless, each of my children shall have full power and authority to will and devise her portion of said inheritance in such manner as she shall see fit." There is one thing made perfectly apparent by this clause of item second and the whole of item third, and that is, that be the estates what they may, each child's respective portion was to be there intact at the time of her death. Now this condition could only be assured by limiting the childrens' estates to life estates. Of course when you have said this, you have said it all, because it follows if a child made a will, her devisee would take title by appointment in her will from Edward Harwood. If the child failed to make a will, then the portion passed as directed in item third of Edward Harwood's will.

Of course the intention of the testator is controlling in the interpretation of wills. Both sides start their arguments with this principle. It would encumber an opinion to cite the Ohio cases on this point, as anybody can find them collated under the head of "Devise" in Bates' Digest; and, after all, we have the classic of *Smith* v. *Bell,* 31 U. S. (6 Pet.) 68 [8 L. Ed. 322]. But we must not forget that it is the intention expressed in the will which must prevail. We are not interested in an intention independent of that which testator has tried to express. *Townsend* v. *Townsend,* 25 Ohio St. 477. As Mr. F. Vaughn Hawkins has said in his essay on this subject, and incorporated by Professor Thayer in his "Preliminary Treatise on Evidence at The Common Law," on page 602 of this latter work:

7 O. C. C. Vol. 27

Hamilton County.

"It cannot be too often repeated that legal interpretation is not a mere ascertaining of the intent; it acts only by putting a meaning consistent with the intent upon the words.

"Intention is not a mere inchoate act of the mind, that which a person intended to do, but took a step towards doing, but something which as a mental act was complete, and which the writer endeavored to express by the words he made use of, although those words in fact express his meaning more or less imperfectly."

Hence it is that we have recourse to extrinsic evidence to ascertain the intent only when there is doubt and ambiguity as to the intent expressed.

"That where the meaning of the words is plain, it is not allowable to question its being the meaning of the writer, is a fundamental maxim of all systems of interpretation.

"*Ubi in verbis nulla ambiguitas, ibi nulla occurrit voluntatis quaestio.*

"*Non licet interpretare quae interpretatione non egent.*" Thayer, *supra,* page 584.

Wills are not reformed like contracts by extrinsic evidence in equity; wills are interpreted. Here is the fallacy in the argument on page 18 in Mr. Matthews' brief.

In order to avoid the repugnancy existing between an absolute gift in the beginning of item second and the limitation upon the same in item third, counsel for plaintiffs seek to tear item third out of the will. Now if there is anything in the will about which every lawyer in any way connected with this case is agreed, it is as to the meaning of item third. We all agree that if the condition arises where item third is called into application, it is possible that by the death of one of Edward Harwood's granchildren having a child before the death of such grandchild's mother, testator's daughter, the great grandchild might be unjustly disinherited. This, after all, is the principal point of counsel for plaintiffs. It is the bugaboo to frighten the interpreter away from the construction claimed by counsel for the trustee. In the first place, the possibility of such happening is just about as remote as the thought was from the mind of the testator. In the second place, "What of it?" We cannot help it. That is what the testator said in plain, unequivocal language. If, because we do not approve of what testator has said or because we do not see how he could have intended what he has said in unmistakable and unambiguous language, we are to tear a plain provision out of a will, we would not be interpreting a will, but destroying it. The same is to be said in reply to the argument based upon

Robbins v. Smith.

possible intestacy by the death of a daughter leaving no children and neither of her sisters surviving her.

These results of intestacy and of disinheriting one in the line of descent are to be avoided if possible, if the language producing such results is susceptible of any other possible construction; but here it is not.

"The rule that a testator will not be presumed to have intended to die intestate as to any part of his estate, to which his attention seems to have been directed, applies only in the construction of a will the language of which is of equivocal import." *Gilpin* v. *Williams*, 17 Ohio St. 396, 397.

"It appearing from the will construed in this case, that it was clearly the intention of the testator to limit the estate given to his wife, in the lot in question to a life estate, and that no disposition was made of the remainder therein, it passed under the statutes of descent to his heirs at law; and though owing to the unskillfulness of the draftsman, reference is made to the residue of the estate that might remain after the payment of debts, as if he contemplated a disposition of it, yet the whole will is to be taken together, and if it appears that only a life estate in the lot is devised, and no person named to take the remainder, it must receive such construction." *Colston* v. *Bishop*, 1 Circ. Dec. 257 (1 R. 460).

No; item third is in the will to stay, to have what effect it may if the time ever comes for its particular application, and to have whatever modifying effect its presence now may have upon the other provisions of the will.

It is claimed on behalf of the plaintiffs that there is such total repugnancy between the absolute estate given in item second and the provisions of item third as to make item third void. To this contention there are two answers:

First. The estate given in item second is not so clearly and manifestly an absolute estate as to make the provisions of item third obviously and necessarily directly and fatally repugnant. We said above that if item second stopped at the first comma, we would be of the opinion that the word, "apportioned," would be given a dispositive signification, as in *Brasher* v. *Marsh*, 15 Ohio St. 103. But this is not the case; the item does not stop there, but the very next words are a limitation and the beginning of a series of limitations. As was said in *Linton* v. *Laycock*, 33 Ohio St. 128, a devise will be implied from a direction to divide, so at best the absolute estate is by implication and not by express devise, and this implication will certainly not be made in disregard and con-

tradiction of express words in the same item and in other parts of the will.

Further, this claim of a total repugnancy begs the whole question, because such repugnancy does not exist unless you assume that the estate given in item second is an absolute estate, and that is the very subject of inquiry here. The only doubtful and ambiguous thing in the will is the nature of the estate given by item second.

Second. The rule prevailing in England and in such states as Pennsylvania, which rigorously rejects a provision for a remainder after an absolute gift, has been much softened and toned down in Ohio by our rule which gives supreme importance to the intention of the testator as construed from the whole will, giving due weight and consideration to every part.

"The whole instrument is to be examined and all taken together and construed as one in order to arrive at the intention, and effect given to every part if possible. Isolated passages are not to control." *Decker* v. *Decker,* 3 Ohio 157; *Williams* v. *Veach,* 17 Ohio 171 [49 Am. Dec. 453]; *Starling* v. *Price,* 16 Ohio St. 29; *Edwards* v. *Rainier,* 17 Ohio St. 597; *Townsend* v. *Townsend,* 25 Ohio St. 477; *Carter* v. *Reddish,* 32 Ohio St. 1.

It is true, as was said in *Collins* v. *Collins,* 40 Ohio St. 353, 364, quoting from *Thornhill* v. *Hull,* 2 Cl. & Fin. 22:

"It is a rule of the courts, in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument in clear and decisive terms, such interest or estate cannot be taken away or cut down by raising a doubt upon the extent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate;" and *Parker* v. *Parker,* 13 Ohio St. 95; *Pendleton* v. *Bowler,* 11 Dec. Re. 551 (27 Bull. 313).

On the other hand, if two clauses of a will are irreconcilable, the last controls the first. *Parker* v. *Parker, supra.* But the controlling principle is as stated in *Baxter* v. *Bowyer,* 19 Ohio St. 490:

"Conflicting provisions of a will should be reconciled so as to conform to the manifest general intent, and it is only in cases where such provisions are wholly and absolutely repugnant that either of them should be rejected.

"Where, by one clause in a will, property is devised or bequeathed, by words *prima facie* importing an absolute estate, and by a subsequent

Robbins v. Smith.

clause is given in remainder to another person, the first devisee **or** legatee takes only a life estate, and the limitation over is valid.''

And more fully in the opinion, per Welch, J., page 497 :

''The first question involved is, whether, by the terms of the will, the wife took an absolute estate in fee, or only a life interest. The language of the first item, construed by itself, would undoubtedly give her a fee. But the whole will must be construed together; and in the light of the whole will, and of the surrounding circumstances, each clause is to receive its interpretation. It is only in cases of total and irreconcilable repugnancy, that any of the provisions of the will can be rejected. It is claimed that there is such a repugnancy here, and that the two last items of this will must be stricken out, leaving the first item to stand alone as the testator's will. Having disposed of the whole estate absolutely by the first item, the other two items, it is said, are a mere attempt to do what the law will not permit, to engraft a remainder upon a fee simple estate.

''It is true that a remainder cannot be engrafted upon a fee. The true reason of this rule, however, is not because the law will not permit it, but because the thing is impossible. I cannot give the whole of my estate to one and part of it to another. I cannot give the absolute fee to my wife, and the remainder to the church, for the same reason that I cannot give a square circle, or give nothing, because it involves an absurdity. But before this rule can be applied, it must first be well ascertained that the will in question does, when construed, fairly, and in the light of all its provisions and surroundings, give an estate in fee. Whether this will does so, is the very question here.

''The testator's intention is the polar star in the construction of a will. It is quite evident on the face of this will, and in view of the fact that neither the testator nor his wife had any children, that he intended his property should go to her and the presbytery, to the exclusion of all others. By the last two items he undertakes to dispose of the entire estate in remainder. He gives, unconditionally and absolutely, $200 for tombstones, and a sum sufficient to defray the expenses of his wife's last sickness and death; and then provides that, when these two things have been adjusted, 'all the property then remaining,' shall go to the presbytery. When remaining? Why, remaining after the deduction of these two sums? In other words, all the estate, except these two sums, and the widow's life interest, shall go to the presbytery. These last two items constitute a very important part of the will, and are not to be rejected if they can at all be reconciled with the provisions in the first item. To reject them *in toto* would be doing much

greater violence to the language of the will than would be done by holding that the testator intended by the provisions of the first item to give a life estate only. What are the provisions of the first item? They are simply these: He gives his 'property' to his wife, with the unrestricted right to 'possess' and 'use' it, and with a power of 'sale,' to be exercised publicly or privately. The provisions as to the 'possession' and 'use' of the property add nothing to the word property, and certainly do not import an absolute estate. Indeed, their introduction at all, after the clause devising the 'property' would seem to negative the idea that the testator supposed he had already vested the property absolutely in his wife.

"If he supposed he had already made her the absolute owner, why make any provision as to the manner of using or possessing it? She would, as a matter of course, use and possess her own property as she pleased. The same may be said of the power to sell. The absolute owner of property can sell it when and where he pleases. But the tenant for life cannot sell without a power granted for that purpose. When so granted, *prima facie,* it is in the nature of an executorial power, or power to change the property into money for the benefit of the estate, or for its better enjoyment. That such is the nature of the power intended here, is also to be argued from the fact that a similar power is given to the wife to collect and pay the debts of the estate. The only thing, therefore, in the first item, which is actually, or even apparently, repugnant to the limitation over, is the word, 'property.' The testator gives to his wife all his 'property.' If he had added the words, 'for life,' after the word, property, all parts of the will would harmonize, and nothing need be rejected. But any equivalent words will surely answer the same purpose; and words fully equivalent are found in the provisions of items two and three. Read together, the two apparently conflicting provisions would stand thus: 'I give all my property to my wife, with remainder in fee at her death to the presbytery of Cincinnati.' Such is substantially the language of the will construed in *Smith* v. *Bell,* 31 U. S. (6 Pet.) 68. Indeed the language there was more repugnant than here. The language there was, 'I give to my wife, Elizabeth Goodwin, all my personal estate * * * to and for her own use and benefit, and disposal absolutely; the remainder of said estate, after her decease, to be for the use of said Jesse Goodwin.' And yet the court held, Chief Justice Marshall delivering the opinion, that the wife took only a life estate, and that the limitation over was effectual."

Also, case of *Pruden* v. *Pruden,* 14 Ohio St. 251, opinion by Ranney, J.:

Robbins v. Smith.

"When an instrument is open to two constructions—the one consistent and the other repugnant to law, or the one will give effect to the whole instrument and the other will destroy a part—the former must always be adopted.

"The rule which destroys a remainder in personal property, when an absolute power of disposition is given to the first taker, does not apply in any case where a total repugnancy between the remainder and the prior interest, does not exist."

Also see *King* v. *Beck*, 15 Ohio 559.

In *Johnson* v. *Johnson*, 51 Ohio St. 446 [38 N. E. Rep. 61]:

"A testator, after providing for the payment of his debts, used the following language in his will: 'Second. I give and devise unto my beloved wife, and her assigns, all of the remainder of my property, both real and personal, however the same may be known, or wheresoever the same may be situate, with full power to bargain, sell, convey, exchange or dispose of the same as she may think proper; but, if at the time of her decease, any of my said property shall remain unconsumed, my will is, that the same be equally divided between my brothers and sisters, and their children, if deceased, the children to have the same amount the parent would be entitled to if living': *Held*, that under this will the widow took only a life estate in the property, both real and personal, with power to bargain, sell, convey, exchange or dispose of the same as she might think proper for consumption in her life support, and that what remained at the time of her death, unconsumed in supporting her, belongs to the remaindermen designated in the will."

But it seems to us idle to discuss this proposition or to cumulate authorities, in view of Chief Justice Marshall's opinion in *Smith* v. *Bell*, *supra*, especially at the top of page 76. See also *Howe* v. *Fuller*, 19 Ohio 51, 56; *Stableton* v. *Ellison*, 21 Ohio St. 527, 533.

It is contended by counsel for plaintiffs that the clause, "Nevertheless, each of my children shall have full power and authority to will and devise her portion of said inheritance in such manner as she shall see fit," is without significance because it is perfectly consistent with an absolute gift. But when you examine item third and see what happens if his daughters do not make wills, then this clause becomes pregnant with meaning and it becomes evident that by it an additional power was given not included in the first gift.

To sum up this branch of the discussion, the one uncertain and ambiguous thing in the will is the nature of the gift or devise by the two-thirds being "equally apportioned;" and the clear and unequivocal things in the will are the limitations upon that gift or devise.

Hamilton County.

As to authorities of counsel for plaintiff, we find nothing particularly helpful to the case at bar in the case of *Turner* v. *Hellard*, 30 Ch. Div. 393, only the general rule favoring testacy. The same is to be said of *Hughes* v. *Prichard*, 6 Ch. Div. 29.

The definition of the primary or paramount intent of a testator and of the secondary or minor intent in Smith's edition of Fearne, Remainders 252, is in accord with our understanding of Mr. Harwood's will. The primary or paramount intent is, that the ancestor, one of Mr. Harwood's daughters, should have the enjoyment of the estate for her life, and subject thereto the estate should descend to all his descendants so far as the rules of descent will permit. The secondary or minor intent is to accomplish the primary or paramount intent in a particular mode—in such a mode at least as the devisor supposes as to secure that primary or paramount intent from being defeated by the act of the ancestor. In other words, the second or minor intent is, that the ancestor should have a life estate only and that her issue should take by purchase.

So here the testator's primary or paramount intent was, that Mrs. Robbins was to have a life estate only and that those who took after her should not take as heirs at law but by purchase from Edward Harwood. Relying on her maternal instinct to preserve the property in the line of her descendants, he prescribed the mode by which she, under the power, was to name those who were to take the remainder from the original testator, and in default of her exercise of the power, testator prescribed who should take the remainder from him. Now even, although the minor or secondary intent be defective as a mode of securing the carrying out of the primary or paramount intent, any defect in the minor or secondary intent is not allowed to defeat or control the primary or paramount intent when it is ascertained.

As to *Mickley's Appeal*, 92 Pa. St. 514, while we do not deem it safe to rely on Pennsylvania cases in matters like the case at bar where the Ohio Supreme Court has so clearly declared the law, there is nothing in this case at variance with the law of Ohio or our conclusion. It is a case of a bequest made to a person absolute in the first instance. That is the precise inquiry here.

The cases of *Wolfer* v. *Hemmer*, 144 Ill. 554 [33 N. E. Rep. 751], and *Wilson* v. *Turner*, 164 Ill. 398 [45 N. E. Rep. 820], are like the Ohio cases of *Collins* v. *Collins*, and *Parker* v. *Parker*, *supra*. The same can be said of *Mulvane* v. *Rude*, 146 Ind. 476 [45 N. E. Rep. 659]. The case of *Law* v. *Douglass*, 107 Iowa 606 [78 N. W. Rep. 212], is like the Ohio case of *Johnson* v. *Johnson*, 51 Ohio St. 446 [38 N. E. Rep.

Robbins v. Smith.

61]. The case of *Hambel* v. *Hambel*, 109 Iowa 459 [80 N. W. Rep. 528], might be classed with the case of *Collins* v. *Collins, supra.* The same of *McNutt* v. *McComb*, 61 Kan. 25 [58 Pac. Rep. 965]. The case of *Webster* v. *Webster*, 93 Ky. 632 [21 S. W. Rep. 332], is either not in point or at variance with the Ohio authorities; it is so different that it is hard to tell. It is not helpful in construing the case at bar. The case of *Engel, In re*, 180 Pa. St. 215 [36 Atl. Rep. 727], is a Pennsylvania case, and, as that state follows the English rule as to repugnancy, is not an authority here. The case of *Megargee* v. *Naglee*, 64 Pa. St. 216, is clearly a case of marital trust and an unsafe authority for the reason assigned above to all Pennsylvania cases. The case of *Tyson, In re*, 191 Pa. St. 218 [43 Atl. Rep. 131], is a Pennsylvania case, and seems at variance with the other cases from that state and to support the contention of counsel for defendants herein. In this case the court speaks of restoring the rule as to intention to its original and proper prominence. *Kelley, In re*, 193 Pa. St. 45 [44 Atl. Rep. 289], is simply a case where the court construes a will as it finds the intention.

We have examined all the cases cited, out of deference to the learning and research of counsel, but we are constrained to say that we find very little assistance in them: First, because they are not needed to establish any of the well-known canons of construction; and, second, because of the singularity of every will others cannot help much.

Having come to the conclusion that Harriet C. Robbins, Gertrude Gordon and Adaline French each take a life estate only in their respective portions of the two-thirds mentioned in item second, the only question remaining is, What effect has the contract made by the parties in their effort to terminate the trust?

"Although a trust may not have ceased by expiration of time, although all its purposes may not have been accomplished, yet if all the parties who are or may be interested in the trust property are in existence, and *sui juris*, and if they consent and agree thereto, courts of equity may decree the determination of a trust and the distribution of the trust fund among those entitled. A trust will not be continued merely that the trustee may continue to receive compensation from it. If the *cestuis* desire its termination, it will not be maintained for the benefit of the trustee." Perry, Trusts 920; *Gloyd* v. *Roff*, 1 Circ. Dec. 472 (2 R. 253); *Taylor* v. *Huber*, 13 Ohio St. 288.

In the case at bar everybody interested in these three several trusts has not joined in an agreement to determine.

We pass the question of the possibility of either of testator's daughters hereafter having children.

There are contracts between Mrs. Gordon and her children and between Mrs. Robbins and her children providing for a determination of the trusts. There is nothing to indicate any consent on the part of Mrs. French to a determination of the trust of her portion. Neither is there any consent on the part of Mrs. Robbins to the termination of the Gordon trust, nor of Mrs. Gordon of the Robbins trust, and nothing in regard to the French trust. There are cross-contingent interests entirely unprovided for.

It was held in *Sise* v. *Willard*, 164 Mass. 48 [41 N. E. Rep. 116] :

"A bill in equity to compel an absolute transfer to the plaintiff of a fund held for him by the trustee under a will cannot be maintained, if his interest in the fund is only a life interest coupled with a power of testamentary disposition."

And was further said in the opinion, page 51 :

"It is premature now to consider whether, on the death of the plaintiff leaving issue but having made no testamentary disposition of her share, that share will go to such issue."

As we have said before, we find that it was the intention of the testator that the respective portions of each of his daughters should be intact at the time of her death. The trust cannot, even by agreement, be terminated in a manner to defeat this intention.

"A testator devised land to his three daughters, H, M and P, their heirs and assigns, with proviso that in case P should remain unmarried, and should make no disposition of her estate by will, her share should at her death be equally divided among her sisters, if surviving her; if not, then among their children: *Held*, following *Kent* v. *Armstrong*, 2 Halst. Ch. 637, that P took only a life estate, with power of testamentary disposition; *held*, also, that the releases of conveyances of H and M and those of M's children (she is dead), and H and her children, did not perfect the title." *Cantine* v. *Brown*, 46 N. J. Law 599.

"Upon a devise of real estate to executors in trust to permit a married daughter 'to use and occupy the farm and to take the rents, issues and profits thereof to her own use during her natural life, free from any control of her present or any future husband, and not to be in any wise liable for any debt or debts he now owes, or which any future husband may hereafter contract,' the court will not upon the death of the husband permit the trust to be set aside, or the estate to be conveyed to the *cestui que trust.*" *O'Kill* v. *Campbell*, 4 N. J. Eq. 1, 13.

As to the conveyance and the contracts by Mrs. Robbins and Mrs. Gordon, to make wills:

Robbins v. Smith.

"There can be no doubt of the legal right of one having the exclusive ownership of property, to enter into a contract to execute a will in favor of the other contracting party, and if a will executed under these circumstances be subsequently canceled, the aid of a court of equity can be invoked.

"But where the power of disposition by will is given to a person having no reversionary interest, an attempted execution of the power by a will made in conformity with the terms of an alleged contract, is invalid. The power is not thereby exhausted, and such will is revoked by a subsequent will duly admitted to probate." *Wilks* v. *Burns,* 60 Md. 64.

"Where a person is tenant for life with a power to appoint the inheritance by will only, and is desirous to sell the fee simple, he may convey to the purchaser for a long term, depending on his life, and exercise the power in the purchaser's favor by will, and covenant not to revoke it. The title, of course, will be incomplete during the vendor's life as he may choose to revoke the will and drive the purchaser to his remedy under the covenant; so he may revoke the will by a clandestine act, and leave no assets to answer the breach of covenant. But if a purchaser be willing to incur the risk, no objection can be raised to the execution of the power should it ultimately take effect. It is a mistake to call it an execution by deed, for the donee has still full power to revoke the will; the performance of the covenant cannot be enforced, but damages only can be recovered for a breach of it." Sugden, Powers 312.

We are, therefore, of the opinion that the trusts created in Edward Harwood's will must stand during the respective lifetimes of his daughters, and plaintiffs' petition will be dismissed.

**Giffen** and **Swing, JJ.,** concur.