**DETERMINATION AS TO AMOUNT OF ESTATE COVERED BY A DEVISE.**

Court of Appeals for Hamilton County.

WILLIAM SADLER ET AL, EXECUTORS, V. CATHARINE SADLER ET AL.*

Decided, May 24, 1915.

*Wills—Construction of the Words "All the Rest, Residue and Remainder"—Provisions of Will and Codicil Harmonized.*

The provision of the codicil of the testatrix's will that "all the rest, residue and remainder of my estate I desire to be converted into money by my executors," did not by implication revoke the clear and certain devise of real estate contained in Item 3 of the will, but refers to the real estate not covered by Item 3 and remaining to be disposed of.

*J. T. Rhyno,* for executors and for Mary Sadler.

*DeCamp & Sutphin* and *Frank H. Williams,* for Catharine Sadler.

JONES (Oliver B.), J.

This is an action brought by the executors at the written request of Catharine Sadler, a legatee, to secure a construction by the court of the will and codicils thereto of Abigail Sadler, deceased, under the provisions of Sections 10857 and 10858 of the General Code.

The will and codicils, omitting the introduction, testatum and attestation clauses, are as follows:

Will dated September 27, 1906.

"*First.* I will and direct that all just debts that may exist against me at my decease may be settled.

"*Second.* To my daughter-in-law, Mary Sadler, wife of my son, William Sadler, I give and bequeath all my personal property of every kind.

"*Third.* To my daughter-in-law, Mary Sadler, wife of my son, William Sadler, I give, devise and bequeath the farm on

*Motion for an order directing the Court of Appeals to certify its record overruled by the Supreme Court October 19, 1915,

which she and my son, William Sadler, and family now reside, being all that certain lot of ground lying next to and on the east side of the Pippin Road, Colerain Township, Hamilton County, Ohio, containing about twenty-one 75/100 (21.75) acres, more or less, to her, her heirs and assigns forever.

"I also give, devise and bequeath to my said daughter-in-law, Mary Sadler, wife of my son, William Sadler, the following real estate, to-wit:" (description of 10 and 75/100 acres of land on the west side of Pippin Road omitted).

"*Fourth.* All the remainder of my real estate, wheresoever the same may be located or situated, I give, devise and bequeath to my son, Charles W. Sadler, for and during his natural life.

"*Fifth.* Upon the death of my son, Charles W. Sadler, I give, devise and bequeath the remainder of the realty conveyed in Item Four, to my grand-daughter, Edith Sadler, now intermarried with one Oscar Lyman, to my grand-daughter, Mabel Sadler, to my grand-daughter, Gladys Sadler and to my grand-son Chester Sadler, share and share alike, to them, their heirs and assigns forever.

"*Sixth.* I hereby nominate and ask the court to appoint my son, William Sadler, and my attorney, J. T. Rhyno, joint executors of this my last Will and Testament.

"I hereby revoke all former wills by me made."

First Codicil, dated August 31, 1910.

"Whereas, I, Abigail Sadler of Colerain Township, Hamilton County, Ohio, did on the 27th day of September, A. D. 1906, make my last will and testament of that date, do hereby declare this to be a codicil to the same.

"I hereby ratify and confirm said will in every respect, save so far as any part of it is inconsistent with this codicil.

"To my husband David Sadler I give, devise and bequeath in lieu of dower all my real estate wheresoever the same may be located or situated, to have and to hold for and during his natural life.

"I hereby revoke Item Fifth of this my last will and testament.

"Upon the death of my son Charles W. Sadler, I desire that the real estate so devised to him in Item IV of my last will and testament shall be converted into money by my executors, who also shall act as joint trustees for this purpose, and out of the proceeds of said sale, I give and bequeath to my grand-daughter Mabel Sadler one undivided one-third interest, to my grand-daughter Gladys Sadler one undivided one-third interest and to

my grandson Chester Sadler one undivided one-third interest, to them, their heirs and assigns forever.''

Second Codicil, dated March 18, 1911.

''Whereas, I Abigail Sadler, of Colerain Township, Hamilton County, Ohio, did on the 27th day of September, A. D. 1906, make my last will and testament of that date, do hereby, declare this to be a codicil to the same.

''I hereby ratify and confirm said will in every respect save so far as any part of it is inconsistent with this codicil. I hereby revoke the codicil to my will, said codicil made on the 31st day of August, A. D. 1910.

''I hereby revoke item fourth (4th) of this my last will and testament.

''I hereby revoke item 5th of this my last will and testament.

''To my husband, David Sadler, I give, devise and bequeath in lieu of dower all my real estate, wheresoever the same may be located or situated, to have and to hold for and during his natural life.

''All the rest, residue and remainder of my real estate, I desire to be converted into money by my executors and after the payment of all my debts, funeral expenses and costs of administration, I give and bequeath to my grand-son, David Sadler and to Catherine Sadler, the wife of my son Chas. Sadler, share and share alike, to them, their heirs and assigns forever.''

The question to be determined is what real estate was intended to be included by the language contained in the last paragraph of the second codicil in the following words:

''All the rest, residue and remainder of my real estate, I desire to be converted into money by my executors,'' etc.

It is contended on behalf of Catharine Sadler that this language includes all of the real estate of which testatrix died seized, subject only to the life estate therein devised to her husband, David Sadler, and that in effect it operated as an implied revocation of Item Third of the original will which devised two tracts, aggregating more than thirty-two acres, to Mary Sadler.

On the other hand, the executors and Mary Sadler insist that Item Third remains in full force unrevoked, and that the clause in question is a residuary clause and applies to and includes

only that portion of testator's real estate which remains after taking out the devise to Mary Sadler covered by Item Third, and the life estate given to the husband.

Abigail Sadler died August 6, 1912, at the age of eighty-five years, leaving her husband, David Sadler, ninety-seven years of age, who has died since the hearing of this case in the common pleas court. They had two sons, William and Charles W. William lived with his wife, Mary, on the farm devised to her in item third of the will, and testator and her husband lived with them in the same house. William and Mary have four sons, all of whom are married, David, Jr., Clarence, Albert and Joseph, and William has a married daughter whose deceased mother was his first wife. Charles W. Sadler and his wife, Catharine, have four children, whose names are given in Item Fifth of the will. About 1909, Charles W. Sadler, being in financial difficulties, left his wife and family and has not been heard from since.

Plausible arguments are made by counsel on each side why the will and codicil should be construed as they desire, because of the personal relations between testator and her respective daughters-in-law, and counsel urge considerations that should move her to provide for them, and in that way for their families. It is argued on the part of Catharine that the original will practically divided the two farms into equal shares, giving one to each branch of the family; that the first codicil did not change this division as between the two families, and therefore a construction of the second codicil which would result in a practical division of the bulk of the proceeds of the property between Catharine, wife of Charles, representing his branch, and David, Jr., oldest son of Mary and William, representing that branch, would be in keeping with this idea of substantial equality between the two branches, and must be considered as the real intention of the testator.

On the part of Mary, it is argued that because she and her husband and family remained on the farm and took care of testator and her husband, who lived with them, and looked after their property, and David, Jr., was especially attentive in nursing and looking after the wants of his grandparents, that the construction sought on her behalf should obtain.

Such arguments can be of little avail. It is not for the court to consider reasons why testator might wish to favor one of her family or refrain from giving to another. She had the right to dispose of her property by her will as she saw fit under the law, without regard to moral obligations and without reference to the needs or merits of the several natural objects of her bounty. It is the duty of the court to determine her intention from the language she has seen fit to use in the will, not to speculate from surrounding circumstances as to what her real intentions might have been.

The law of Ohio as to the construction of wills has been clearly stated in numerous cases by our Supreme Court, and in none more so than in *Townsend* v. *Townsend*, 25 O. S., 477, the syllabus of which is as follows:

"1. In a construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

"2. Such intention must be ascertained from the words contained in the will.

"3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear from the context that they were used by the testator in some secondary sense.

"4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.

"5. If a dispute arises as to the identity of any person or thing named in the will, extrinsic facts may be resorted to, in so far as they can be made ancillary to the right interpretation of the testator's words, but for no other purpose."

In *Collier* v. *Collier*, 3 O. S., 369, the law is thus stated:

"A will and codicil are to be taken and construed together, as parts of one and the same instrument, and the intent of the testator gathered from the whole.

"A codicil will not be held to revoke the disposition of a will, further than is clearly expressed or necessarily to be inferred from it."

The will and the second codicil must therefore be considered together as though they were parts of one and the same entire instrument.

The first codicil having been entirely revoked by the second, it will only be considered, if necessary, for the purpose of aiding to determine the meaning of the language used in the will and the second codicil.

Items fourth and fifth of the will are both expressly revoked by the second codicil. These are the only items expressly revoked. The other portions of the will all remain operative just as they originally stood, except where modified in some respect by the codicil, unless the language used in the will should compel the court to find a revocation by implication. If the will and codicil can be construed together giving force and effect to every part, they must be so construed that all may stand, and no part will be invalidated or set aside except by clear and decisive terms.

As was stated in *Parker* v. *Parker,* 13 O. S., 95, at page 110, quoting from *Thornhill* v. *Hull*:

" 'It is a rule of the courts in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument, in clear and decisive terms, such interest or estate can not be taken away or cut down by raising a doubt, upon the extent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that interest or estate.' In pronouncing the opinion in that case the Lord Chancellor Brougham said: 'I hold it to be a rule that admits of no exception, in the construction of written instruments, that where one interest is given, where one estate is conveyed, where one benefit is bestowed in one part of the instrument, by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer, or be he layman, could entertain a doubt—in order to reverse that opinion, to which the terms would of themselves and standing alone, have led, it is not sufficient that you should raise a mist; it is not sufficient that you should create a doubt; it is not sufficient that you should show a possibility; it is not even sufficient that you should deal in probabilities; but you must show something in another part of that instrument, which is as decisive the one way as the other terms were decisive the other way; and that the interest first given can not be taken away either by *tacitum* or by *dubium* or by *possibile,* or even by *probabile,* but that it must be taken away by *expressum et certum.*' "

The first item of the will stands subject only to the further direction that the debts be paid out of the proceeds of the real estate, provided for in the last paragraph of the second codicil. The second item is not changed, though it is agreed that there is practically no personal estate. Likewise it is agreed that there is no change in the sixth item appointing the executors.

The third item is clear and decisive. There can be no mistaking its purpose to devise two specific parcels out of the real estate in fee simple to Mary Sadler. There is, however, no question that this was modified by the grant of a life estate in all the real estate to David Sadler, as made in the next to the last paragraph of the second codicil. This life estate has now been terminated by the death of David Sadler pending these proceedings. But it is claimed that the entire item is revoked by the final paragraph of the second codicil, because by the words "All the rest, residue and remainder of my real estate"—there directed to be sold—it is intended to include all the real estate owned by the testator at the time of her death, subject only to the life estate of her husband.

To require this construction it is argued that the word "remainder" is used in its technical sense of a remainder of an estate in land depending upon a particular prior estate created at the same time and by the same instrument and limited to arise immediately on the determination of that estate; that because the will and codicils were drawn by a lawyer this technical meaning must be supposed to have been intended, particularly so, because the paragraph in which the word is found follows immediately that in which the life estate is given to the husband, and an interest in remainder in land is most frequently made to take effect after a life estate.

If this meaning had been intended, in the nice use of language by one learned in the law, the words "all the rest and residue" would hardly have been used in connection with the word "remainder," which would have expressed the intention, alone. And he would have said "the remainder *in* my real estate," not "*of* my real estate."

The words all the "rest, residue and remainder" are general words commonly employed in a residuary clause of a will, to em-

brace every species of property (40 Cyc., 1567). The three words, "rest," "residue" and "remainder" are given as synonyms in the Century and other dictionaries, and each is defined as being "that which remains after a part is taken, separated, removed or dealt with in some other way." The Century Dictionary further states: "Rest is the most general term; it may represent a large or small part. Remainder and residue generally represent a comparatively small part, and remnant a part not only very small but of little or no account." The use of these three words "all the *rest, residue* and *remainder* of my estate" must be deemed to provide an ordinary residue clause for the disposition of so much of her real estate as had not been disposed of by other parts of the will and codicil.

It is a general rule where the same words are used in different parts of a will, relating to the same subject-matter, they must be presumed to be used always in the same sense, if the context of the will does not show a contrary intention (40 Cyc., 1402). The word "remainder" is used in the will, both in the fourth and in the fifth items, and it is not used in either in the technical sense claimed for it in the codicil, by counsel for appellants. They concede this as to its use in item fourth, but they claim that its use is technical in item fifth. With this we do not agree. The words "the remainder of the realty conveyed" used in the fifth item, devised "upon the death of my son," surely mean the same property as "all the remainder of my real estate" used in the fourth item. The word "remainder" is used in its ordinary and not in its technical sense in both these items. And applying the general rule, it must be considered to have been used in its ordinary and not in its technical sense in the last codicil, and more especially so, as before stated, because it is there coupled with "rest" and "residue."

Counsel for appellants rely upon the portion of the clause giving the life estate to the husband in the second codicil, in that it immediately precedes the residuary clause and, as they contend, aids the construction sought by them. It will be observed that this clause giving the life estate to the husband is identical with a similar clause in the first codicil, and that it was there fol-

lowed by a changed disposition of the real estate devised for life to Charles, providing for its sale, and that the real estate there ordered sold is the same real estate which is ordered sold by the second codicil, if it is so construed as to permit item third of the will to stand, thus evidencing a desire to change her will by codicils only as to that part of the real estate originally left to Charles.

The testator in her last codicil has expressly ratified and confirmed said will in every respect save so far as any part is inconsistent with the codicil. She proceeded to revoke items fourth and fifth which dealt with the real estate left originally to Charles and his family, and revoked the first codicil, which had made a change in the same property, and without revoking or changing in any way the third item, which gave the other part of the real estate to the wife of William, she proceeded to order the rest of the real estate converted into money. Can it be said if she intended to include all of her real estate she would not have expressly revoked item third and provided for the sale of all her real estate in clearer terms than "all the rest, residue and remainder of my real estate?" The use of this residuary phrase implies that a portion has been previously disposed of, and with the clear, decisive and important language of item third in full force, unrevoked, and the declaration ratifying and confirming the will, it can not be said that the gift of the life estate to her husband was alone taken out to leave this residuary estate, or that any revocation of item third can be implied.

Counsel for Catharine Sadler, in argument for the construction they seek, rely largely upon the case of *Newcomb v. Webster,* 113 N..Y., 191, but in the opinion of the majority of the court that case is not controlling. In that case, as said in the opinion of the court, the testatrix "so dealt with the principal real estate described in it as by sale to revoke the gifts mentioned in the second and fourth clauses. She also acquired real estate and entertained a desire that beneficiaries other than those first selected should share in her bounty. These circumstances would naturally require a redistribution of her estate, and in view of them, we think it clear that the testatrix intended to make new disposi-

tion of her entire property. Such is, at any rate, the effect of the language employed by her."

In that case also, as the court stated, "there was an express revocation of so much of the will as is inconsistent with the provisions of the codicil," while in the case at bar the will is expressly ratified and confirmed save so far as any part of it was inconsistent with the codicil. That case also, on page 197 of the opinion, construes the word "remainder" in the phrase "all the rest, residue and remainder" as we have construed it.

In the case of *Griggs* v. *Griggs,* 80 App. Div. (N. Y.), 339 (aff. 178 N. Y., 540), where the will and the language employed are more similar to the case before us than in *Newcomb* v. *Webster,* the court distinguished that case and construed the will before it as the majority of the court construe this one.

Numerous authorities have been collated in the exhaustive briefs of counsel, which might be discussed if time and space permitted, but it is sufficient to say that their careful consideration convinces us that the will and codicil should be construed to give full force and effect to item third in the devise there contained to Mary Sadler, and that the residue of the real estate should be sold by the executors under the provisions of the last paragraph of the second codicil, and a decree may be taken accordingly.

GORMAN, J., concurs; JONES (E. H.), J., dissents.


JONES (E. H.), J., dissenting.

The second codicil disposes of all the real estate owned by testatrix. This is my understanding of the language there used.

The devise to Mary Sadler made by item third of the will is therefore inconsistent with the codicil and is revoked by it. This construction is supported by the Court of Appeals of New York in *Newcomb* v. *Webster et al,* 113 N. Y., 191, in which the precise question before this court was determined.